## M'Credy *against* Fey.

A plaintiff may suffer a nonsuit at any time during the trial of a cause, and before the jury are ready to give their verdict, notwithstanding there be an issue upon a plea of set off.

ERROR to the district court of *Alleghany* county.

This was an action on the case founded upon a due bill by Dennis M'Credy against Thomas Fey, in which the defendant pleaded payment and set off.

After the cause had progressed so far as that the evidence had all been heard on both sides, the plaintiff offered to become nonsuit; to which the defendant objected, on the ground that he had pleaded a set off.

*Per Curiam.*—The defendant has pleaded a set off, has given evidence by which he claims, and possibly may recover, a verdict certifying a sum due in his favour; the court consider themselves bound, by the decision or *dictum* in Lewis *v.* Culbertson, to refuse the plaintiff leave to take a nonsuit, and to suffer him to harass the defendant by another suit, after he has been fully heard.

Exception by plaintiff.

*M'Candless* and *Forward*, for plaintiff in error, cited, 1 *Rawle* 341; 12 *Serg. & Rawle* 59; 1 *Troub. & Haly* 289; 9 *Serg. & Rawle* 379, 409; 10 *Serg. & Rawle* 55; 17 *Serg. & Rawle* 385.

*Shaler* and *Mahon*, for defendant in error, cited, 1 *Dall.* 430; 3 *Yeates* 42, 46; 1 *Johns. Cas.* 247; 3 *Term Rep.* 661; 1 *Campb.* 327; 2 *Yeates* 530; 2 *Browne's Rep.* 80; 16 *Mass.* 317; 11 *Serg. & Rawle* 59; 17 *Serg. & Rawle* 365; 12 *Mass.* 49.

The opinion of the Court was delivered by

KENNEDY, J.—That according to the rule of the common law no verdict could be given unless the plaintiff, by himself, attorney or counsel, appeared in court, cannot, I apprehend, be questioned. 3 *Bl. Com.* 376. The reason of this rule originally seems to have been that, the plaintiff being liable to be amerced in case the jury delivered a verdict against him as a punishment for his false claim, it was therefore necessary that he should either be present in person or by his attorney or counsel in order to answer to such amercement, otherwise no verdict could be given; and in the event of his nonappearance he was *nonsuit, non sequitur clamorem suum.* 3 *Bl. Com.* 376. Though the original reason for this rule may have long since

ceased, still, because it is better for the plaintiff to take a nonsuit than a verdict against him, he has been indulged in it; and the rule has been continued in full force down to the present time, without diminution in the slightest degree, except so far as it may have been changed or altered by statute. " Therefore," says Sir William Blackstone, " it is usual for a plaintiff when he or his counsel perceives that he has not given evidence sufficient to maintain his issue to be voluntarily nonsuited, or to withdraw himself: whereupon the cryer is ordered to call the plaintiff; and if neither he nor any body for him appears, he is nonsuited, the jurors are discharged, the action is at an end, and the defendant shall recover his costs." 3 *Bl. Com.* 376. To which he there superadds, " the reason of this practice is, that a nonsuit is more eligible for the plaintiff than a verdict against him: for after a nonsuit, which is only a default, he may commence the same suit again for the same cause of action; but after a verdict had, and judgment consequent thereupon, he is forever barred from attacking the defendant upon the same ground of complaint." This rule prevailed here in its fullest extent since the first settlement of the state as a province, until the legislature in 1814, by an act to regulate proceedings in courts of justice, among other things enacted that, " whenever on trial of any cause the jury shall be ready to give in their verdict, the plaintiff shall not be called, nor shall he *then* be permitted to suffer a nonsuit." Thus impliedly, but very plainly, recognizing the right of the plaintiff, previously thereto, to take a nonsuit in every case if he pleased, but restraining him thereafter from doing so, after the jury should be ready to give in their verdict.

Previously to the passage of this act the practice undoubtedly was, without exception, to call the plaintiff in every case, when the jury came into court to deliver their verdict; and upon his failing to answer, either by himself, his attorney or counsel, the court directed a nonsuit to be entered, and discharged the jury without their giving a verdict, which terminated that action; though the plaintiff might thereafter bring another of the like kind for the same cause. Even in replevin, where it is said both parties are actors, I am inclined to think that the plaintiff could not at common law have been compelled to receive the verdict; and if he refused to answer when called for that purpose, no verdict could be given. It is true that courts have refused in replevin to permit judgment, as in case of a nonsuit, to be entered against the plaintiff, for not going to trial according to the practice of the court, upon the ground that both parties are actors therein, and therefore the defendant might have carried down the record or brought the cause to trial by proviso. Jones *v.* Concanon, 3 *T. R.* 660; Egleton *v.* Smart, 1 *Bl. Rep.* 375; Barrett *v.* Forrester, 1 *Johns. Cas.* 247. This, however, was only deciding that the plaintiff should not have a judgment of nonsuit entered against him at the instance of the defendant in the replevin; and not that the plaintiff had no right to take a nonsuit voluntarily. Though it may be, but I do not say it is so, that under the statute of

17 Ch. 2, c. 7, sec. 2, in cases of replevin founded upon distresses for rent, the plaintiffs have no right to take a nonsuit after issue joined, and the *jury are sworn.* By this statute it is enacted, " that in case the plaintiff shall be nonsuit after cognizance or avowry made and issue joined, or if a verdict shall be given against the plaintiff, then the jurors who were empanelled or returned to inquire of such issue shall, at the prayer of the defendant, inquire concerning the sum of the arrears and the value of the goods or cattle distrained ; and thereupon the avowant, or he that makes cognizance, shall have judgment for the arrearages, or so much thereof as the goods or cattle amount unto, together with all his costs ; and shall have execution thereupon by *fieri facias, elegit* or otherwise as the law shall require." But Mr Justice Heath at *nisi prius,* in an action of *assumpsit,* Harding *v.* Spicer, 1 *Camp. Cas.* 327, ruled after a plea of tender put in by the defendant, upon which he brought the money into court and the plaintiff took it out, that the plaintiff could not take a nonsuit. He mentions as an authority for doing so, that on the Oxford circuit he had once permitted it, but the nonsuit was afterwards set aside by the court. He does not mention the names of the parties to the case ; and I am not aware that such a decision of the court has been reported in any case. It would, however, rather seem to have been an opinion long entertained by him ; for in Gatteridge *v.* Smith, 2 *H. Bl. Rep.* 377, some twelve years before, where the question was, whether the paying money into court by the defendant did not preclude the plaintiff from taking a nonsuit afterwards, he says, in speaking of bringing the money into court, "coming in lieu of a tender it has all the effect which a tender would have had, and it is clear that after a tender the plaintiff cannot be nonsuited." That the bringing of money into court has all the effect of a tender, except as to the costs which shall have accrued anterior to its being done, may be correct ; but I am at a loss to perceive any justifiable ground upon which the plaintiff shall be precluded from taking a nonsuit after a plea of tender. And it is settled by a train of decisions that the defendant's bringing money, admitted by him to be due to the plaintiff, into court does not prevent the latter from taking a nonsuit. Ellow *v.* Callow, 2 *Salk.* 597 ; Burstal *v.* Horner, 7 *T. R.* 372 ; Jenkins *v.* Tucker, 1 *H. Bl. Rep.* 90; Gutteridge *v.* Smith, 2 *H. Bl. Rep.* 374; Hitchcock *v.* Tyron, 2 *Esp. Cas.* 482, *note*; Smith *v.* Vale, 2 *Esp. Cas.* 607. It appears to me, therefore, that the opinion and decision of Mr Justice Heath are not only contrary to the well established rule of the common law in this respect, but to the current of authorities in a case admitted by himself to be strictly analogous ; and being so, it ought not to be received as law, or as having any force whatever. In joint actions however against several defendants the plaintiff cannot be nonsuited as to one of them only, by reason of the incongruity which would thence arise. Weller *v.* Gayton, 1 *Burr.* 358 ; Powell *v.* White, *Doug.* 169 ; Philpot *v.* Muller, *Doug.* 169, *note.* This perhaps is the only exception established

[M'Credy v. Fey.]

by any case of authority to the rule that the plaintiff cannot take a nonsuit by declining to take the verdict. The reason of it is obvious; for taking the nonsuit being a privilege given the plaintiff for his benefit, he may waive it by previously doing an act inconsistent with it, as in the cases last referred to: by taking a judgment by default against one of the defendants, he thereby precludes himself from becoming nonsuited as to the others. If he were permitted to take a nonsuit in such a case, it would be conceding to him the right of bringing another action for the same cause; which ought not to be after having taken a judgment against one of the defendants.

The case, however, of Lawrence *v.* Burns, 2 *Browne's Rep.* 60, and the opinion of the late Mr Justice Duncan in Lewis *v.* Culbertson, 11 *Serg. & Rawle* 60, have been cited and relied on by the counsel for the defendant to sustain the decision of the court below. As to the case in *Browne,* it would be sufficient perhaps to say that it is not this case; for there the plaintiff, being called when the jury came into court to deliver their verdict, actually answered, and they gave a verdict generally for the defendant, besides reporting a sum of money to be due from the plaintiff to him; on which it would seem they intended to allow interest, but omitted to make a calculation of the amount; so that the plaintiff having answered and taken the verdict could with no propriety claim to be nonsuited, after having ascertained that the verdict was against him. He made his election, and it was no more than right that he should be bound by it. Then as to the case of Lewis *v.* Culbertson, the principle decided there has no bearing whatever upon the question here. The opinion quoted, of Mr Justice Duncan, though entitled to very great respect, yet not being called for by the decision of the case must be regarded merely as his own individual opinion. His idea that the plea of payment, with notice of set off, would, under our defalcation act of 1705, be sufficient to preclude the plaintiff afterwards from taking a nonsuit, may be considered as founded in a great measure upon the notion of Mr Justice Heath that the plea of tender was sufficient to prevent it; for he adopts this opinion as sound law, and says, "on the plea of a tender amply sufficient to cover the debt proved on the trial, the plaintiff cannot be nonsuited, otherwise he might take the money out of court and commence a fresh action." And then concludes thus: "the rule as to nonsuits is this, that the plaintiff may in general cases suffer a nonsuit, unless there be something on the record inconsistent with this judgment; something on the record to prevent the plaintiff from abandoning his suit," without making any distinction as to that *something,* whether it has been the act of the plaintiff or the defendant that has placed it on the record. If he had confined it to the act of the plaintiff only, he might perhaps have been correct; as in the cases referred to above, where the plaintiff, after taking a judgment by default against one of two or more defendants, was not permitted afterwards to take a nonsuit as to the others. But in no case, I apprehend, is it competent for the defen-

dant, by an act of his, to preclude the plaintiff from becoming non-suit if he pleases, unless it be authorized by statute; and we are of opinion that there is nothing contained in our act of defalcation which warrants it. The defendant, having a demand against the plaintiff, is not compelled by the act to set it off; he may do so, or he may bring an action against the plaintiff for it, as he pleases: it is therefore his own folly or neglect if he permit the statute of limitations to interfere with the collection of his demand. If it were to be held otherwise, it is evident that it would be putting it in the power of a defendant to compel the plaintiff to carry on his suit in some instances at great expense, after he had discovered that by the death of a witness, or some other cause, he could not maintain it. In order to effect this it would only be necessary for the defendant, besides the general issue, to plead payment with notice of set off, when in truth he had no demand against the plaintiff to set off; the plaintiff, being thus deprived of his privilege of taking a nonsuit afterwards, is compelled, as it may be, at great inconvenience and costs, to go on to trial, but being unable to adduce the evidence to support his claim, and being the plaintiff and actor in the suit, is subjected to all the costs, when the defendant has no pretence of claim against him.

Judgment reversed.