Supply Ditch Company v. Elliott et al.

1. The legal effect of a plea of tender is an unanswerable presumption of indebtedness to the extent of the tender, and when the tender is brought into court for the use of the plaintiff, that amount is considered as stricken from the complaint.  If more is claimed the plaintiff proceeds for the excess of his demand above the tender only.

2. A demurrer admits all the material facts well pleaded in the pleading to which the demurrer applies.

3. Argumentative pleading is bad under all systems of pleading.

4. The relation of stockholders to the corporation whose stock they hold is that of contract, and the rights and duties of both parties grow out of contract implied in a subscription for stock, construed by the provisions of the charter or articles of incorporation.

5. The corporation is a trustee for its stockholders and is bound to protect their interests.

6. Certificates of stock are assignable and pass from hand to hand by indorsement as bills of exchange and promissory notes pass, and holders of such certificates are *prima facie* presumed to be *bona fide* owners thereof.

7. A corporation is ordinarily justified in treating the assignee and holder of certificates of stock as the legal and equitable owner thereof.

8. Any transfer of stock by a corporation upon its books, in the absence of the original certificate, is made at its peril, and the real owner of the stock, evidenced by such certificate, loses nothing thereby; upon stock so issued by wrong or mistake the corporation is liable to a *bona fide* holder thereof.

*Error to District Court, Boulder County.*

THE facts are stated in the opinion.

Messrs. DOLLOFF and RITTENHOUSE, for plaintiff in error.

Mr. B. L. CARR, for defendant in error.

MACON, C.   From the admissions of the pleadings in this case the following facts appear:   During and prior to the year 1883, plaintiff in error was an incorporated ditch company, owning an irrigating ditch, and having its capital stock divided into shares, each of which entitled the holder thereof to take from said company ditch ten inches of water for irrigating purposes, upon the condition that he applied for such water before or by the 20th day of May of the year in which he desired to use the water, and pay or secure to the company the sum of $1 per inch for all the water he might use.   In 1879 one Moyer owned two shares of the stock of plaintiff in error, and pledged the same to one I. M. Phillips in trust to secure the payment of a debt due from him to one John Phillips.   When this pledge of stock was made, the certificates thereof had not been issued by the company, but the company was advised of the nature of the transaction between Moyer and Phillips, and recognized the right of Moyer to the stock by allowing him to use water and vote at meetings of the company.   It seems that no certificates for these shares were issued by the company until the 28th day of September, 1882, when the company, without the consent of Moyer, issued two certificates for his stock to I. M. Phillips, numbered respectively 385 and 386.   Before the issuance of the certificates to I. M. Phillips, and on the 18th day of September, 1882, Moyer assigned absolutely these two shares of stock to defendant in error Elliott; but no notice of such assignment was given to the company by Elliott, or any other person, until some time in June, 1883.

In January, 1883, one Yates sued I. M. Phillips, and in the statutory way attached these two shares of stock; and on the 8th day of February, 1883, the same were sold by the sheriff of Boulder county, under the judgment obtained by said Yates against said I. M. Phillips; and one C. J. Buck became the purchaser thereof, who, on the next day, left with the secretary of the company a copy of the certificate of sale issued to him by the sheriff, which was by said secretary placed on file in the proper book of the company. When Yates brought his suit, and when the sale was made to Buck of these shares, both Yates and Buck had notice of the extent and character of I. M. Phillips' interest in said shares of stock.

On the 19th day of May, 1883, defendant in error Elliott applied to plaintiff in error for twenty inches of water, in addition to thirty inches to which he was entitled under three shares of stock in the plaintiff company, but did not inform it of his ownership or claim of right to the Moyer shares, and left the company in ignorance of his claim thereto, and tendered $20 for the additional water demanded, which demand and tender were refused by plaintiff in error. Again, about the 1st of June following, Elliott produced to the plaintiff in error an order in writing from said Moyer, directing the company to transfer on its books to him (Elliott) the said two shares of stock, and about the same time both I. M. and John Phillips, in writing, directed the company to make such transfer to said Elliott, and release to him all their interest and right in and to said stock. Upon the presentation of these orders to the company, Elliott demanded the transfer of the stock to him on the company books, but made no demand for water; nor did he tender payment or security to the company for the twenty inches of additional water demanded on May 19th.

When this demand was made by Elliott for the transfer of the said stock, the two certificates numbered 385

and 386, before that time issued to I. M. Phillips, were still in the possession of said Phillips, and were not produced to the company by either Elliott or Phillips, and no offer was made to surrender such certificates at that time nor until about the 13th day of July following. The company refused to make such transfer to Elliott; and, after the refusal of the company to transfer this stock to Elliott (but at what date does not appear), defendants in error took forcibly, and against the will of the company, twenty inches of water under Elliott's claim of right to the said Moyer stock; for the taking of which this action was brought.

Defendants answered and set up four distinct defenses: *First*, that they did not take the water unlawfully; *second*, that plaintiff was not damaged as alleged in the complaint; *third*, admitting the taking of the water, but justifying under a claim of five shares of stock in the plaintiff company, two of which were the said Moyer shares; and, *fourth*, setting out all the facts on which said Elliott's right to the stock was based, and the other facts which have already been stated in this opinion, and brought into court the sum of $20 as the price and value of the water taken and used by them, and for which this action was brought. Plaintiff replied to the third defense, admitting said Elliott's ownership to three shares of stock, as alleged by him in said defense, but denied his ownership to more than the three shares, and to the fourth defense filed its demurrer; the court overruled the demurrer, and plaintiff electing to stand thereby, the court rendered judgment for defendants, that the suit be dismissed, and that they be allowed to take out of court the $20 which they had tendered.

In defending the action defendants relied upon Elliott's ownership of the Moyer stock, and the right to twenty inches of water thereunder, as a contract right, growing out of the relation of said Elliott to the plaintiff company as a stockholder therein. He relied upon his right

as a contract right, by virtue of the stock, and a compliance with the regulations of the plaintiff set up in his fourth defense. If Elliott had been the owner of the stock, and the company had accepted the tender of $20 made to it by him on the 19th of May, 1883, he would have been entitled to water, upon proper application or proceeding therefor; and the defense rests upon the assumption that he was such owner, and that the tender made was equivalent to payment of the water dues. Having used the water after tender, and brought the money into court they acknowledged that they were indebted to the company to that extent, and the duty of payment.

It is evident that in its judgment the court sustained defendants' defense, recognizing his contracts rights, and held the tender equivalent to payment, and that by the tender the defendants were the owners of so much water, which they had taken from the ditch of plaintiff and used. The legal effect of a plea of tender is an irrebuttable presumption of indebtedness to the extent of the tender, and when the tender is brought into court for the use of plaintiff, that amount is considered as stricken from the complaint; and if more is claimed by plaintiff, he proceeds for the excess of his demand above the tender only. *Bank v. Sutherland,* 3 Cow. 336; *Spalding v. Vandercook,* 2 Wend. 431; *Johnston v. Insurance Co.* 7 Johns. 315; *Hubbard v. Knous,* 7 Cush. 556. After a plea of tender, a plaintiff may be nonsuited in proceeding to recover beyond the tender. *Jenkins v. Cutchens,* 2 Miles, 65; *McCredy v. Fey,* 7 Watts, 499. From this position, it follows inevitably that, if the court were right in finding the defense made out, it erred in adjudging the money brought into court in support of the tender of May 19th to defendants. The effect of the judgment, in such case, was to give to defendants under the contract both the water and the money, which, by their fourth defense, they confess the payment or security of was a condition precedent to their right to use the water.

But as we shall hereafter see, defendant whólly failed to sustain his alleged defense.

The first assignment of error — "That the court erred in overruling the plaintiff's demurrer to the further and separate answer and defense contained in defendants' answer" — presents a question that will be best disposed of by first referring to a few rules and principles of pleading, and to some of the settled rules of the law of corporations.

As to the rules of pleading which it is necessary to examine here, it may be said that it is elementary that a demurrer admits all the material facts well pleaded in the pleading to which the demurrer applies, and all the necessary intendments and inferences of and from such facts, but no more, and that, as to all facts not alleged in a pleading attacked by a demurrer, or arising from necessary inference out of the facts alleged, they are assumed not to exist. *Jones v. Latham,* 70 Ala. 164, in which case a demurrer was filed to a bill in equity, and the court held the following language: "It is our duty to construe the bill most strongly against the pleader, and, on such a motion as this, to hold that every material fact not averred does not exist;" citing *Cockeral v. Gurley,* 26 Ala. 405; *Lucas v. Oliver,* 34 Ala. 631. In the next place, argumentative pleading is bad, under all systems of pleading in this country. The application of these rules will be made further on in this opinion.

The law of corporations applicable to the questions under discussion will be stated in a few words:

*First.* The relation of stockholders to the corporation whose stock they hold is that of contract, and the rights and duties of both parties grow out of contract, implied in a subscription for stock, construed by the provisions of the charter or articles of incorporation.

*Second.* The corporation is a trustee for its stockholders, and is bound to protect their interests. 1 Mor. Corp. § 237, and cases cited; *Lowry v. Bank,* Taney, 310; *Bayard*

*v. Bank*, 52 Pa. St. 232; *Atkinson v. Atkinson*, 8 Allen, 15; *Shaw v. Spencer*, 100 Mass. 382; *Fisher v. Brown*, 104 Mass. 259; *Duncan v. Jardon*, 15 Wall. 165.

*Third.* Certificates of stock are assignable, and pass from hand to hand by indorsement, as bills of exchange and promissory notes pass, and holders of such certificates are *prima facie* presumed to be the *bona fide* owners thereof, and an innocent purhaser thereof for value will hold them against the true owner, where the latter has placed it in the power of the assignor to perpetrate a fraud upon the innocent assignee. *Lanier v. Bank*, 11 Wall. 369. In that case Justice Davis, speaking for the court, says: "The power to transfer their stock is one of the most valuable franchises conferred by congress upon banking associations. Without this power, it can readily be seen the value of the stock would be greatly lessened, and obviously, whatever contributes to make the shares of stock a safe mode of investment, and easily convertible, tends to enhance their value. It is no less to the interest of the shareholder than the public that the certificate representing his stock should be in a form to secure public confidence; for without this he could not negotiate it to any advantage. It is in obedience to this requirement that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they become the basis of commercial transaction in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form nor character negotiable paper, they approximate to it as nearly as practicable. If we assume that the certificates in question are not different from those in general use by corporations (and the assumption is a safe one), it is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy with safety. He is told under the seal of the corporation that the shareholder is entitled to so much

stock, which can be transferred on the books of the corporation in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know that whoever in good faith buys the stock and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes farther, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates."

*Fourth.* A corporation is ordinarily justified in treating the assignee and holder of certificates of stock as the legal and equitable owner thereof. *Lanier v. Bank, supra.*

*Fifth.* Any transfer of stock by a corporation upon its books, in the absence of the original certificate, is made at its peril, and the real owner of the stock, evidenced by such certificate, loses nothing thereby; but upon the stock so issued by wrong or mistake, the corporation is liable to a *bona fide* holder thereof. *Davis v. Bank,* 2 Bing. 393; *Pollock v. Bank,* 7 N. Y. 274; *Cohen v. Gwynn,* 4 Md. Ch. 357; *In re Railway Co.,* L. R. 3 Q. B. 584; *Donaldson v. Jaillot,* L. R. 3 Eq. 374; *Sewall v. Boston W. P. Co.* 4 Allen, 277.

Testing the admitted facts of this case by these rules of law, it is manifest that the demurrer to the fourth defense ought to have been sustained. When, on the 19th day of May, 1883, defendant in error Elliott applied for the water, and tendered the $20, the company did not know he was the owner of this Moyer stock, and he did not so inform it. He did not even declare himself to be such owner, and exhibited no evidence of title. He did not then demand a transfer of the stock to himself on the company books, but made his request for water, as a mere stranger desiring to buy so much water. We say this, because in the answer there is no averment that Elliott informed the company of his rights in the prem-

ises, either orally or by any written evidence; nor does it appear that at that time he made any demand for a transfer of the stock to himself, nor presented the certificates he claimed by assignment from Phillips. To assume from the averments of the cross-complaint that he did so would be the most vicious kind of argument, which no court will make in favor of the pleader. The absence of all allegations to that effect, by the sound rules of pleading, require the assumption that no such facts existed, and the company was bound, in the absence of such evidence, from its duties to its stockholders, to refuse to recognize Elliott as the owner of the stock, and was justified in refusing to permit him to take any more water from the ditch than he was entitled to under the three shares of stock admitted to belong to him. If on that occasion Elliott did submit to the company proper evidence of his title he should have so alleged in his pleading. The company, therefore, was not in default in refusing to accept the tender of $20, and to permit Elliott to take the water for which he applied, and, if not in default, then defendants in error were not justified in taking the water as they did. Hence, unless the conduct of the plaintiff in error in refusing on the 1st day of June, 1883, to transfer the stock to defendant in error Elliott was so far wrong as to justify defendants in their conduct,— if trespass could be excused,— there is nothing in the case to relieve them from the charge of trespass upon the property of plaintiff in error. To determine this question a brief review of the transactions of June 1st, between the company and the defendant in error Elliott, Moyer, and the two Phillips, is necessary. From the admitted averments of the cross-complaint, it appears that, on June 1st, Elliott did not demand water under these shares, nor offer to pay for it, but only required the transfer of the stock to himself. That he did not then have in his possession the two certificates for this stock, but that they were in the possession of I. M.

Phillips; that the latter did not, until about six weeks after this demand by Elliott, surrender these two certificates to the company for Elliott's benefit. As has been seen, a corporation always acts at its peril in issuing stock to an alleged assignee thereof, in the absence of the assigned certificates, because, if new certificates of stock are issued without the surrender of the old ones, and such new stock passes into the hands of an innocent purchaser, it will be good in his favor against the corporation.

Here, then, on June 1st, a demand was made on the company for a transfer of this stock, upon the order of Moyer and the two Phillips, but the certificates were not produced, and no excuse or explanation was given for their non-production. When, on the books of the company, was recorded the certificate of sale of this same stock to Buck on February 8th preceding? The company did right in refusing to make the transfer. But, if the missing certificates had been produced, and offered for cancellation, and the transfer had been made, such act alone would not have entitled defendants in error to the water. They still had to pay, or offer to pay or secure, the $20 due the company for the water, before they could lawfully demand it. This they failed to do, and by reason of such failure they could have no right to withdraw water from the ditch, and in doing so were trespassers.

The court erred in overruling the demurrer to the cross-complaint; and for this the judgment must be reversed and the cause remanded, with directions to proceed according to law.

We concur: Rising, C.; Stallcup, C.

Per Curiam. For the reasons assigned in the foregoing opinion the judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed.*