[No. 5185.]

[No. 2790 C. A.]

O'MARA v. NEWCOMB, TRUSTEE, ET AL.

1. **Corporations—Certificates of Stock—Indorsements in Blank—Bona Fide Pledgee.**

   Plaintiff purchased on the stock exchange certain certificates of stock in the usual form, having on the back a blank form of indorsement and an appropriate blank power of attorney for transfer, which were indorsed in blank by the original owner; and in this form, deposited such certificates with a stock broker, who, without authority, pledged them to defendant as collateral security for a loan, and then left the country without paying the loan. Held, that defendant was a bona fide purchaser of the certificates for value without notice of plaintiff's equity, and was entitled to sell them to pay the loan for which they were pledged. —P. 277.

2. **Appellate Practice—Cross-Errors—Failure to Assign.**

   Alleged error of the trial court in dismissing defendant's counterclaim cannot be reviewed on plaintiff's appeal where defendant fails to assign cross-errors.—P. 279.

3. **Appellate Practice—Alleged Error—Ground of Ruling—Record Silent—Presumptions.**

   Where the record does not show on what ground the trial court dismissed a counterclaim, it may be assumed that the evidence was insufficient to support it; and, where it is not pointed out wherein the evidence establishes it, the appellate court will decline to enter that field of inquiry.—P. 280.

*Appeal from the District Court of Teller County.*
*Hon. Louis W. Cunningham, Judge.*

Action by John O'Mara against E. C. Newcomb, as trustee, and The First National Bank of Cripple Creek. From a judgment in favor of defendants, plaintiff appeals. *Affirmed.*

Mr. TULLY SCOTT, for appellant.

Mr. R. W. WITHERS, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

A stranger to this action was the owner of certain certificates of stock in a mining company organized under the laws of this state. The certificates were in the usual form, having on the back a blank form of indorsement and an appropriate blank power of attorney for their proper transfer. This owner indorsed them in blank, and subsequently they were purchased by the plaintiff, John O'Mara, on the stock exchange. With the certificates in this condition, O'Mara left them for safe keeping with C. A. Gill, who was a stockbroker in the city of Cripple Creek. Several months after this deposit Gill, who was a customer of the First National Bank, applied to its cashier, E. C. Newcomb, for a loan, which he secured by pledging as collateral security various certificates of stock, including the ones in controversy.

Newcomb was aware that it was the custom of some stockbrokers to borrow money of other lenders and pledge as security certificates of stock which they held as agents or brokers, but his bank had never done so, and he supposed, when Gill applied for the loan, that he was the owner of the certificates. No inquiry was made as to their ownership, and nothing occurred at that, or any other, time to apprise New-

comb that the certificates were not Gill's exclusive property. Newcomb testifies that he had no reason whatever to suppose that the stock belonged to the plaintiff, or to any other person than Gill, and would not have loaned the money, or received the pledges, had he not supposed Gill to be the true owner. The only knowledge he had of their ownership was what was apparent on the face of the stock certificates themselves, and the fact that they were in Gill's possession and brought by him to the bank to be pledged as security for a loan.

Subsequently Gill departed from the state without paying the note, and the bank proposed to sell the stock and apply the proceeds to the liquidation of the debt. Afterwards, plaintiff's demand for possession of these certificates was refused, and thereupon he notified the mining company not to make transfer of them upon the books of the company to defendant. Before that, a sale of the stock had been made by the defendant bank, but, because of plaintiff's notice to the company not to transfer, the sale could not be perfected.

The plaintiff then brought this action to recover the value of the stock, and the defendants denied his ownership, and the bank, alleging that it was a *bona fide* purchaser for value without notice of plaintiff's equities, resisted the claim, and, by way of counterclaim, asked for damages which it sustained by reason of its inability to sell the stock because of plaintiff's wrongful interference, the stock thereafter and at the time of the trial being practically worthless.

The trial court dismissed plaintiff's action, and also defendants' counterclaim, and the plaintiff, O'Mara, brings the case here by appeal.

The foregoing statement of facts, as to which the evidence seems not to be in conflict—at least, it strongly tends to establish the facts as recited—

would seem to bring the case within the decision of this court in *Supply Ditch Co. v. Elliott,* 10 Colo. 327, wherein it was said that "Certificates of stock are assignable and pass from hand to hand by indorsement, as bills of exchange and promissory notes pass, and holders of such certificates are *prima facie* presumed to be the *bona fide* owners thereof, and an innocent purchaser thereof for value will hold them against the true owner, where the latter has placed it in the power of the assignor to perpetrate a fraud upon the innocent assignee." *Bank v. Lanier,* 11 Wall. 369, is cited as authority for this holding, and an examination of that case shows its pertinency.

The plaintiff seeks to bring the case within the doctrine applicable to tangible personal property, that mere possession thereof does not clothe the holder with sufficient *indicia* of ownership to pass title to an innocent purchaser; and also invokes the doctrine governing transfers of stolen or forged negotiable paper or certificates of stock. Neither is in point. Here the plaintiff, the true owner, voluntarily clothed Gill, his bailee, with the usual *indicia* of ownership of these certificates. A blank form of assignment on the back was signed by him, including the blank power of attorney. This enabled Gill, or any other holder, to present them to the issuing corporation, and to have the shares transferred to any person whose name was inserted in the appropriate blanks.

*Supply Ditch Co. v. Elliott* is in harmony with all the best reasoned modern cases in this country, though contrary to the general rule laid down by the courts of England. At section 1708g, 2 Daniel on Neg. Ins. (4th ed.), it is said that, when such formal assignment and power of attorney in blank is signed by the shareholder—as was true in the case before us—and the certificate is delivered therewith, an ap-

parent ownership in the shares represented is created in the holder. In such a case, the learned author says that a *bona fide* purchaser for value without notice will be protected in his acquisition of the certificate, although the agent to whom it has been entrusted has diverted it from the purposes for which it was put in his charge.

In speaking to the same point, Cook on Stock and Stockholders (3d ed.), section 416, says: "Indeed, to such an extent has the law of estoppel been applied to protect a *bona fide* purchaser of stock, that he is protected now in almost every instance where he would be protected if he were purchasing a promissory note or other negotiable instrument." And, while it is true that certificates of stock are not negotiable paper, and the statement that they are seminegotiable has been criticised as tending to confusion, it is nevertheless true that the courts are so steadily and consistently extending the application of the law of estoppel to certificates of stock that, as said by Mr. Cook, in the course of time it is possible that they may become more negotiable than negotiable instruments themselves.

One of the leading cases in support of our conclusion is *McNeil v. Tenth Nat. Bank*, 46 N. Y. 325. The opinion by Rapallo, Judge, is well reasoned and conclusive.

The learned commentator on the Law of Corporations, Judge Thompson, in volume 2, at sections 2589 and 2593, cites *Supply Ditch Co. v. Elliott, supra*, as stating the true doctrine in this country. There are other reasons, not necessary to discuss, why plaintiff failed to establish the cause of action pleaded.

In argument, appellees say that the trial court committed error in dismissing their counterclaim, and ask either that judgment here be entered in their

favor thereupon, or that the cause be remanded for a new trial. We must sustain this ruling. We do not find that appellees have assigned cross-errors on the record. Without such assignment, we cannot consider their objection. Besides, it not appearing upon what ground the trial court based the ruling, we may assume that the evidence in support of the counter-claim was insufficient, and, as it is not pointed out wherein the evidence establishes it, we decline to enter that field of inquiry.

The judgment as rendered should be affirmed.

*Affirmed.*

Chief Justice Gabbert and Mr. Justice Steele concur.