[No. 6566.]

THE IRONSTONE DITCH COMPANY v. THE EQUITABLE SECURITIES COMPANY.

1. CORPORATIONS—*Transfer of Stock*—To perfect a transfer of corporate stock as against innocent third persons purchasing for value, the certificate must be assigned, and surrendered to the corporation, a new certificate issued, and the record required by the statute (Mills Stat. sec. 508, Rev. Stat. sec. 870) made in the corporate books—(273).

2. ——*Pledge of Corporate Stock*—A stockholder pledged his stock to secure a loan of money. The pledge was evidenced by a writing separate from the stock certificate. This writing was exhibited to the secretary of the corporation, and he appended thereto his certificate, that he had "made the necessary transfer of said shares" to the pledgee "on the books of the company." Some memoranda in pencil of this pledge, the contents of which was not shown, was made in the books of the company, but was afterwards, and before the transfer of the certificate, erased. The stock certificate, without any assignment or note of the pledge thereon, was left in the hands of the stockholders, who, by proper endorsement, assigned it to an innocent purchaser for value. *Held;* that the innocent purchaser was to be

preferred to the pledgee, and that the corporation could not be required to issue to the pledgee a certificate evidencing the shares, while that issued to the purchaser for value was outstanding—(270-273).

*Error to Montrose District Court.*—HON. SPRIGG SHACKLEFORD, Judge.

Mr. S. S. SHERMAN, Messrs. KING & STEWART, for plaintiff in error.

Messrs. BELL, CATLIN & BLAKE, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1. November 13, 1890, Anson B. Johnson owned 160 acres of land in Delta county, and six shares of stock in the defendant company, in which the water was divided pro rata on the stock. All the capital stock was issued, and all the water appropriated by the ditch was in use by the stockholders. On this day Johnson borrowed on his five year note, $2400.00 of The Montrose Investment Company, secured by a deed of trust on the land. As additional security, Johnson assigned the stock, on a separate sheet, substantially as follows:

"I, being indebted to The Montrose Investment Company in the sum of $2400.00, secured by a deed of trust, for further security of said indebtedness, assign, and transfer as collateral security to Bonney trustee, all my right, title and interest in and to six shares of the capital stock of the Ironstone Ditch Company, and hereby direct the secretary of the company to make the necessary transfers on the books of the company. Until default is declared, the rights and privileges belonging to a stockholder, shall belong to me."

This assignment was not combined with the stock certificate, but was on a blank form used by the investment company. Below the assignment was a blank certificate for the secretary to sign. The trustee, Bonney, took this sheet to the secretary November 19, 1890, and had him sign the certificate, as follows:

"I, J .C. Brown, of Delta county, Colorado, secretary of the Ironstone Ditch Company, hereby certify that as directed in the preceeding assignment, I have this day made the necessary transfer of said shares of stock to the said The Montrose Investment Company, on the books of the company.

"In witness whereof I have hereunto set my hand and affixed the seal of the company this 19th day of November, 1890.

(Seal)    "J. C. BROWN, Secretary."

Nothing was done to or with the stock certificate. There is no evidence that Bonney, the trustee, who attended to the business of making the loan, or the loan company, ever saw the stock. Johnson kept it, and there was no change in the possession of, or assignment on the stock certificate. The paper signed by Johnson was taken to the secretary by the trustee, for the purpose of having him sign the certificate. Nothing was done and no effort was made to have the stock actually transferred. The certificate of stock was not presented to the secretary with a request to cancel it and issue a new certificate. The sheet containing the assignment was not left with the secretary. He at the time made some lead pencil memorandum of the transaction on the stockbook of the company which was afterward erased, and neither McCoy nor Halley knew of this memorandum. The following is the form of the stock certificate:

"This certifies that A. B. Johnson is entitled to six shares in the capital stock of the Ironstone Ditch Co. Transferable only on the books of the company (personally) or by attorney on surrender of this certificate."

Combined with the certificate on the back is the usual blank form of assignment. July 21, 1894, Johnson sold, assigned and delivered the stock to McCoy, an innocent purchaser for value. September 19, 1894, McCoy surrendered the stock to the secretary, asked to have it cancelled, a new certificate issued to him, and the transfer recorded on the books of the company, which was done.

The record fails to show what the pencil memorandum made by the secretary was, or when it was erased. There is evidence tending to show it was probably erased by the secretary about the time he made the transfer of stock to McCoy in 1894, but nothing definite. December 27, 1898, McCoy sold, assigned and delivered the stock to Halley, an innocent purchaser for value, and he presented the certificate to the secretary and had it cancelled and reissued to him, and the proper record of the transfer made on the books of the company. Halley now has the stock and the use of the water.

The Johnson note was assigned to plaintiff, January 19, 1898. It caused said deed of trust to be foreclosed, and the land sold, March 27, 1899 leaving a deficiency on the note of $922.25. July 10, 1899, plaintiff began this suit to foreclose a lien on the stock, to pay the deficiency and to recover $3,000.00 damages against the ditch company. Johnson was served by publication. Plaintiff prayed: a deficiency judgment against Johnson; that this assignment of the stock for security of the note be confirmed; for the sale of the stock, the proceeds to be applied in payment of the balance; that all persons be barred and foreclosed of all right or equity and equity

of redemption in and to the stock; that the ditch company be compelled to issue a new certificate for the six shares of stock to the purchaser at the foreclosure sale; and for damages in the sum of $3,000.00. The ditch company specially denied the material allegations of the complaint, and then moved for judgment on the pleadings. The remarkable motion was sustained. The case was brought here for review, reversed and remanded. *Equitable Securities Co. v. Johnson,* 36 Colo. 377. After answer and replication were filed, it was tried October 30, 1907. The court found that Johnson's assignment of the six shares of stock as collateral security for the payment of the note, should be confirmed; that the attempted cancellation of the entry of transfer of the same from Johnson to the trustee, (the pencil memorandum) be set aside; that the transfer is and has been in full force and effect since November 19, 1890; that the ditch company immediately issue to Redding, successor in trust, for the use of plaintiff, a regular certificate for the six shares of stock; that he sell the same at public sale to pay the balance of the indebtedness; that the ditch company issue, and deliver to the purchaser at the sale of said stock, its regular certificate for the six shares, upon the surrender of the certificate directed to be issued to Redding; that there is a balance due from Johnson to the plaintiff in the sum of $3783.14. The ditch company brings the case here on error.

The statute in force in 1890, when the transaction occurred, made it the duty of directors of a corporation to cause a book to be kept by the secretary containing the names of all persons alphabetically arranged, who are, or shall within one year, have been stockholders, and showing their place of residence, the number of shares held by them respectively, and the time when they be-

came the owners of such shares, and the time when they ceased to be stockholders and the amount of stock actually paid in and the proportion paid in cash; and further providing: "No transfer of stock shall be valid for any purpose whatever  *  *  * · unless it shall have been entered therein, as required by this section, within sixty days from the date of such transfer, by an entry showing to and from whom transferred; *or, in case of the pledge of any such stock a memorandum be made upon the books of said company, showing to whom and for what amount the stock has been pledged.*" The portion italicized, was added by the legislature in 1903.

2.    Plaintiff company is the assignee and stands in the place of The Montrose Investment Company. The latter originally made the loan, and permitted the stock certificate to remain in the hands of Johnson unendorsed, with as full right, so far as an inspection of the certificate would show, to sell it, as though it had not been pledged as security for the payment of the note. Under such circumstances, the stock cannot be taken from the possession of a bona fide transferee for value, to enforce a lien against it.—*O'Mara v. Newcomb,* 38 Colo. 275.

To perfect a transfer of corporate stock as against innocent third parties, two distinct steps are necessary: first, the certificate must be assigned; second, it must be delivered to the corporation, a new certificate issued, and the record required by the statute, made on the corporation books. The pencil memorandum made by the secretary, under the facts of this case, came far short of constituting a transfer of the stock as against innocent third parties.

A transferee of a certificate of stock, in good faith, for value, takes it free of any latent equities in favor of third parties. The court could not compel the ditch com-

pany to issue a new certificate for these six shares of stock while the original certificate remained in the hands of a bona fide purchaser for value. This was error. If the court had retained jurisdiction over the person of Halley, and he still had possession of the stock certificate, and the court found from the evidence he was not a bona fide purchaser for value, then it could have compelled him to assign and surrender the stock for cancellation, ordered it cancelled, and a new certificate issued to the substituted trustee.—3 Clark & Marshall Private Corporations, p. 1844, section 607; p. 1755, section 572; p. 1751, section 571; 6 ed., sections 373, 382, Cook on Corporations; *Atkinson v. Foster,* 134 Ill. 473.

In the former decision, the court was considering the case made by the complaint, which is entirely different from the case made at the trial by the evidence. The memorandum made by the secretary cannot avail against Halley in the case now before us, because it is undisputed that it had been erased before he purchased the certificate assigned to him, and received a new certificate.

There may be enough stated in the complaint to proceed to trial against the ditch company on that branch of its action based on damages, under the former decision of this court. But as to the liability of the ditch company and the sufficiency of the complaint to state a cause of action based on damages, we express no opinion. The case is remanded and counsel will be allowed to amend the complaint, if he so desires, upon this branch of the case against the ditch company.

*Reversed.*

Mr. Justice Musser and Mr. Justice Gabbert concur.