## No. 16,673.

### WEINCHEL *v.* ADAMIC.
(242 P. [2d] 219)

Mr. CHARLES E. ROTHE, Mr. DON B. OLIVER, for plaintiff in error.

Mr. T. LEE WITCHER, Mr. EDWIN H. STINEMEYER, Mr. FRANK G. STINEMEYER, Mr. WILLIAM H. STINEMEYER, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

WE will herein refer to parties to this action as they appeared in the trial court where plaintiff in error was defendant and defendant in error was plaintiff. The trial court directed a verdict for plaintiff on his first claim which was for certain cattle purchased by defendant from plaintiff, and the jury returned a verdict for plaintiff on his second claim for exemplary damages in the sum of $5,000. Appropriate judgment followed, to reverse which defendant brings the cause here for review by writ of error.

April 29, 1949 plaintiff and defendant entered into a written contract at Canon City, Colorado for the sale and purchase of sixty-seven head of cattle at an agreed price of $18.00 per hundred pounds. It was provided in this contract that the cattle were to be kept by plaintiff overnight, without food or water, and delivered to defendant on the following morning. Defendant paid plaintiff $1,000 when the contract was signed, and when the cattle were weighed and delivered to him the following morning he delivered to plaintiff his check for $11,603.60, drawn on a Denver bank, being the balance due. About this item there was no dispute. Defendant

transported the cattle to Denver, arriving there on the evening of April 30th. On May 2, 1949 counsel for defendant sent plaintiff a letter advising that the cattle had received both feed and water between 7 o'clock P.M. April 29, 1949 and 7 o'clock A.M. April 30, 1949, and that they "showed signs of founder." Defendant stopped payment on the check and his attorney demanded an adjustment of the purchase price. Plaintiff thereupon instituted this suit.

In his original complaint plaintiff in one claim demanded recovery of the purchase price of the cattle, also for exemplary damages based on defendant's action in stopping payment on the check, and for body execution. Defendant filed a motion to separate the claims set forth, and plaintiff voluntarily filed an amended complaint alleging in his first claim the contract, sale, purchase and delivery of the cattle; the payment of $1,000; and demanded judgment for the balance of $11,-603.60. In his second claim plaintiff alleged the sale of the cattle, the delivery of the $11,603.60 check, and that defendant stopped payment thereon, and further alleged, "That the purpose of defendant in stopping payment on said check as aforesaid, and in notifying plaintiff, through his attorney, that an adjustment would be required on the purchase price, was to fraudulently obtain possession of said steers and thereby to either defraud plaintiff of the balance of said purchase price or to unlawfully force and induce plaintiff to reduce the purchase price from that agreed upon and paid at the time of the delivery of said cattle." It further was alleged by plaintiff that defendant's claims as to the condition of the cattle were false and that defendant's "acts and doings were made and done with the preconceived intent and purpose of defendant to cheat, wrong and defraud plaintiff of said cattle and the balance of the agreed cash purchase price of the same"; that the second claim "is founded upon a tort" and defendant's acts "were attended by circumstances of fraud, malice and

wanton and reckless disregard of plaintiff's rights and feelings." Under this second claim plaintiff demanded $12,500 exemplary damages in addition to $11,864.65 actual damages, and "for a body judgment according to the statutes of the State of Colorado."

Answering the first claim, defendant denied the sale; admitted he had paid plaintiff $1,000; admitted plaintiff's demand for payment, and denied all other matters alleged therein. In answer to the second claim, defendant admitted the execution of the contract; the payment of $1,000; that he stopped payment on the check; and denied all other averments in said claim. As an additional defense, defendant alleged that he had been damaged in the sum of $4,522.50 by reason of plaintiff's feeding and watering the cattle during said twelve-hour period, and he tendered into court a certified check for $7,081.10 in full satisfaction of plaintiff's claim. Defendant also filed a counterclaim in which he sought to recover $4,522.50 damages, predicated on the facts last set forth. In a second counterclaim he alleged that plaintiff knew that defendant purchased said cattle as "feeders"; that plaintiff "warranted said cattle to be in all respects fit and proper for such use"; and that said cattle were unfit, because plaintiff fed and watered them during said twelve-hour period; that by reason thereof, "the cattle lost in market value the sum of eight cents per pound on 70,020 pounds." That said counterclaim was "founded upon a tort." Defendant demanded $5,601.60 actual damages and $500.00 exemplary damages under this counterclaim.

As hereinbefore stated, the trial court directed a verdict in favor of plaintiff on his first claim and submitted to the jury the matter of exemplary damages under plaintiff's second claim. The jury awarded plaintiff $5,000 exemplary damages.

After judgment was entered, defendant filed a petition asking for an order to the effect that the tendered

check might be withdrawn by him, which petition was denied by the trial court.

Seeking a reversal of the judgment entered on the two verdicts, defendant brings the case here for review, specifying as errors: The action of the court in directing a verdict in favor of plaintiff on the first claim; in submitting the issue of exemplary damages to the jury; in striking the defendant's first and second counterclaims; and in denying defendant's application for the return of his certified check tendered in full settlement.

Defendant had some forty-five years experience in buying and selling cattle. Prior to the signing of the contract he inspected the cattle. He spent about one hour looking them over to satisfy himself that they were cattle he wanted to buy, and eliminated from the herd two cows which were blind. Defendant testified that when he looked the cattle over "they were pretty good feeders." He also said: "I will buy any cattle, it don't make any difference"; and further: "I do all the business in my own judgment, whether it is good or bad." Defendant was in the corral when, after the contract was signed, plaintiff covered the watering trough with tarpaulin and nailed it down. Early on April 30th defendant had the cattle loaded and took them to Denver. He had ample opportunity to inspect and look them over, not only in the corral, but when they were weighed, and in Canon City where they stopped, preliminary to the trip to Denver.

The trial court was correct in directing a verdict for plaintiff on his first claim. Even if we accord a very liberal interpretation to defendant's answer, the proof he offered did not show any breach of the contract by plaintiff. All of defendant's evidence was based on inference, surmise and conjecture. No witnesses saw the cattle fed or watered during the twelve-hour period. There was no substantial evidence that the cattle had been fed or watered during that time. Section (d) of Rule 101 R.C.P. Colo. provides: "(d) In any civil action

based on injury to person or property where the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton or reckless disregard of the injured party's rights and feelings, the jury may in addition to awarding actual damages sustained by such party, include reasonable exemplary damages."

■ Instruction No. 2 given by the trial court, told the jury: "That it is an act of fraud for one to demand that another accept in exchange for his property a sum less than the amount to which the second party is entitled when such demand is accomplished by a false statement or statements of facts which are known by the party making the same to be false, which statements are made to induce the second party to accept an amount less than that to which he is legally entitled. Accordingly, if you find that the statements contained in the letter of May 2, 1949, written on behalf of defendant by his attorney, contained statements which were false and which defendant either knew or should have known were false, and that the demand contained in such letter was made for the purpose of inducing plaintiff to accept less than he was legally entitled to for his cattle, then you will find that the defendant was guilty of an act of fraud and that plaintiff is entitled to recover exemplary damages against the defendant."

Tersely stated, what the defendant herein did was to advise plaintiff that the cattle "showed evidence of founder," and he demanded an adjustment of the purchase price on a completed transaction. Plaintiff did nothing except make demand for the full purchase price after defendant had stopped payment on his check. His position was not thereby prejudiced. Did defendant's conduct as disclosed by the evidence, justify the trial court in submitting the matter of exemplary damages to the jury? Clearly not. *Westesen v. Olathe State Bank*, 75 Colo. 340, 225 Pac. 837, was a case where the bank, in violation of its contract, refused to credit plaintiff's ac-

count with the amount of notes given it to defray plaintiff's expenses of a trip to California, and plaintiff's checks drawn on the account were dishonored. Plaintiff sought exemplary damages. In that case our court said: "The case involves no such wrong as the statute * * * and the general rule contemplate." The giving of instruction No. 2 by the trial court was error under the facts disclosed by the record in the instant case.

In the trial of this cause the court was liberal in admitting all testimony offered by defendant to show the inferior condition of the cattle after April 30, 1949 and for a reasonable time thereafter. Ample opportunity was given defendant to amend his counterclaims after they were stricken, but he did not see fit to do so. However, the trial court received all relevant evidence offered on every phase of the case including the averments in the counterclaims, and even though we should hold that under our present liberal system of pleading these counterclaims were sufficient, yet the proof to sustain them was lacking. Everything therein alleged was predicated on the alleged fact that plaintiff had fed and watered these cattle, and had warranted them. This was not proven. We find no error in the action of the court in striking the counterclaims.

The trial court did not err in denying defendant's application for the return of his tender. When paid into court this money was beyond the power of defendant to reclaim it. "If the plaintiff goes on with the action and is nonsuited, or the verdict is against him, or is for a sum less than the amount tendered and paid into court, still the defendant cannot take the money back, for it is not his, but has passed irrevocably to his adversary." 52 Am. Jur., p. 247, §45; *Supply Ditch Co. v. Elliott,* 10 Colo. 327, 15 Pac. 691; *Mann v. Sprout,* 185 N. Y. 109, 77 N.E. 1018.

Defendant made no application to the trial court to reduce plaintiff's demand by the amount of his tender. He is now in no position to claim the return of his de-

posit. Of necessity it will be credited on the judgment.

We have carefully reviewed this entire record and deem it unnecessary to consider other specifications of error, which we find to be without merit.

The judgment on plaintiff's first claim is affirmed; the judgment on the second claim is reversed and the cause remanded with directions to the trial court to vacate it.