No. 16,927.

BILLINGS DITCH COMPANY *v*. INDUSTRIAL COMMISSION.
(253 P. [2d] 1058)

Decided February 9, 1953. Rehearing denied March 2, 1953.

Mr. RICHARD E. CONOUR, ELIZABETH A. CONOUR, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission.

Mr. GORDON H. HOWE, JR., for defendant in error Allen.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

THE BILLINGS DITCH COMPANY, appearing as plaintiff in the trial court, sought therein, without success, to

have set aside an award of the Industrial Commission in behalf of claimant Allen.

There appears no substantial disagreement with respect to the facts. In November, 1950, claimant Allen, a farm laborer, with others, was engaged for hire in the task of cleaning and putting in repair the Billings ditch. The work included the removal of certain deteriorated wooden structures, designated in the record as "bulk-heads," and the replacement thereof by new ones. While so engaged, on November 22, 1950, claimant suffered an injury to his back, on account of which he was awarded compensation by the Commission.

Plaintiff contended at the hearings before the referee and the Commission, however, that claimant was not entitled to compensation for the reason that he was at the time of his injury engaged in farm and ranch labor, thus falling within the exemption clause of the Workmen's Compensation Act and relieving plaintiff from liability thereunder. This exemption having been urged before the commission, upon remand from the district court requiring the Commission to make a specific finding thereon, the Commission, under date of January 4, 1952, entered a supplemental award by which it held that at the time of his injury claimant was not employed to perform, and was not performing, farm and ranch labor and that he is not exempt from the operation of the Workmen's Compensation Act by the provisions of section 287 (c), chapter 97, '35 C.S.A. The Commission affirmed its previous award, together with the order of the referee. The district court upon final hearing entered judgment ratifying and confirming, in all respects, the award of the Commission and directed that plaintiff's amended complaint be dismissed.

There is presented here the single question of whether the claimant, at the date of his injury on November 22, 1950, was employed in the performance of farm and ranch work, thus coming under the provisions of the

exemption clause of section 287 (c), chapter 97, '35 C.S.A.

 Farm and ranch labor falls, of course, within the field of agriculture, which, while not a technical term, has many times been legally defined. Without undertaking to repeat these definitions at length, we state that, agriculture in general refers to any activity incident to the cultivation of land for the growing of crops, the harvesting thereof, and the care and feeding of livestock. In general, see, *Great Western Mushroom Co. v. Industrial Commission*, 103 Colo. 39, 82 P. (2d.) 751. It includes tillage, seeding, husbandry, and all things incident to farming in the widest sense of that term. In Colorado, as in all arid Western states, irrigation of the soil for the growing of crops and pasturage is one of the important features of agriculture, and is as necessary to the growing of abundant crops as are the processes of tillage and cultivation.

Had claimant been employed by one of the individuals owning an interest in the Billings Ditch in the maintenance, cleaning and repair of an irrigation ditch on his individual premises, it is readily apparent that his injury would be noncompensable as falling within the exemption clause of the statute. This would also have been true had a call been put out by the ditch company on its stockholders to furnish men for the cleaning and repair of the main ditch and claimant had been hired expressly for that purpose by one, or more, of the individual owners of the ditch, and this, regardless as to whatever point throughout the length of said ditch claimant had been working at the time of his injury. These assumed situations are of course not in accordance with the facts of this case, and are here stated only for the purpose of clarifying the scope of agricultural exemption and for the purpose of later herein drawing comparison.

In this case disagreement between counsel, and difficulty to the court, arises over determination of the

character of plaintiff company. On behalf of the plaintiff it is contended that the Billings ditch is a strictly mutual ditch, owned exclusively by the individual ranchmen who derive water therefrom and who own all of the stock in the company; that it is a nonprofit organization limited in its field of operation to the use and benefit of the stockholders who own it, and that it is, in fact, nothing more than a corporate association of its stockholding individual farmers for their own convenience. This is not conceded on behalf of the Commission or the claimant, who contend that, under its articles of incorporation, plaintiff is set up to own and maintain the ditch, to supply water to lands adjacent thereto and to such lands as lie beyond the eastern terminus thereof, or adjacent to or near any of its branches or laterals, and particularly "also for the purpose of furnishing water to all such persons as have or may hereafter desire to purchase the same from the owners of said ditch."

It is disclosed clearly by the record, and without dispute, that in practical operation the use of the Billings Ditch is strictly confined to those individuals who are stockholders in the company, the water carried thereby being divided pro-rata according to the number of shares of stock held by each participant. It is equally clear, and the bylaws provide, that no person other than a stockholder may draw water through said ditch and that the stockholders themselves are restricted from loaning or leasing the water to which they are respectively entitled to any other person, or permitting use thereof by others. Its maintenance and entire cost of operation is borne by assessments levied upon its shares of stock, either in cash or in labor. No charge is made for the carriage of water; no profit results from the operation of said ditch; its stock pays no dividends. The Billings ditch is not assessed for taxation purposes, the water rights represented therein being assessed under and in connection with the land of each of the respective ranch owners.

■■ On behalf of the Commission and the claimant it is argued that the Billings Ditch Company owns the ditch and the water. This is incorrect, for while the naked title may stand in the name of the ditch company, the actual owners of the ditch and water rights are the owners of the farms served thereby, in proportion to the stock interests of each thereof. The water rights may not be sold separate from these several tracts of land, and the sale and conveyance of the land carries with it the ditch and water rights, regardless of the transfer of the stock on the books of the company. Under the undisputed facts of this case the conclusion is inescapable that the Billings Ditch is a mutual irrigation ditch, and that the corporation is merely the vehicle by which its owners operate and manage its affairs. It was neither organized, nor is it operated, for profit, but solely for the convenience of its members in the management of their irrigation system and the distribution of the proper apportionment of water to the owners as their respective interests may appear; the shares of stock being merely incidental to the ownership of the water rights. *Comstock v. Olney Springs Drainage District,* 97 Colo. 416, 419, 50 P. (2d) 531; see, also, *Cache La Poudre Irrigating Co. v. The Larimer and Weld Reservoir Co.,* 25 Colo. 144, 53 Pac. 318; *Kendrick v. Twin Lakes Reservoir Co.,* 58 Colo. 281, 144 Pac. 884. The shares of stock in the Billings Ditch Company are not personal property, but represent varying interests in separate parcels of real estate. *Comstock v. Olney Springs Drainage District, supra; Ireton v. Idaho Irrigation Co.,* 30 Idaho 310, 164 Pac. 687, 869. What it does, and the practice and policy adopted by a corporation in its operation, rather than the language contained in its articles of incorporation, are determinative of its character. *Colorado Utilities Corporation v. Public Utilities Commission,* 99 Colo. 189, 61 P. (2d) 849. Although incorporated under the general laws as a public corporation, the stockholders of a

ditch company may so limit operative policy as to convert their corporation into a private or mutual company. *Southern California Edison Co. v. Railroad Commission of California,* 194 Cal. 757, 230 Pac. 661.

■ On behalf of claimant and the Commission it is contended, however, that since the Commission found the fact to be that claimant at the time of his injury was not engaged in the performance of farm or ranch labor, such finding is conclusive. Were this a finding of fact there would be merit to this contention. Here, however, the facts are undisputed to any appreciable extent, and where the facts are unquestioned the issue becomes one of law for the courts to decide. *Lackey v. Industrial Commission,* 80 Colo. 112, 116, 249 Pac. 662. "Where there is no conflict in the testimony and it appears that an award of the Industrial Commission is based on unwarranted inferences or improper application of the law, a district court is at liberty to set aside the award." *Meyer v. Lakewood Country Club,* 122 Colo. 110, 112, 220 P. (2d) 371.

■ The provisions of compensation acts in different jurisdictions vary in terminology to the extent that in many instances reliance may not be had thereon as a guide to solution of similar questions in this jurisdiction. There are, however, a number of instances where it has been necessary to determine whether, and where, it may be said that a claimant is or is not engaged in agriculture or in farm and ranch labor. "In the construction of statutes the spirit and intent must prevail." *Great Western Mushroom Co. v. Industrial Commission, supra.*

■ It is contended on behalf of claimant that, having been hired to repair a ditch, including the replacement of wooden bulkheads, he was not engaged in farm or ranch labor. Under circumstances such as are presented here, the man who cleans and repairs the ditch through which water is to be carried to irrigate the fields, and the man who plows the field, as well as he who later

irrigates it, all are engaged in a common employment, each working to accomplish the same final result of growing a crop. *Industrial Commission v. Funk,* 68 Colo. 467, 475, 191 Pac. 125. In the case of *Peterson v. Farmers State Bank,* 180 Minn. 40, 230 N.W. 124, it is said that, "Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to to determine whether he is a farm laborer."

 Earlier in this opinion we cited certain instances wherein it would appear clear that if claimant had been similarly injured while privately employed on this very same ditch, he would definitely have been within the exemption of the statute. Now can we say that the farmers who own the Billings ditch, having been sufficiently progressive so as to have organized themselves under the method provided by statute for the operation of their mutually owned water and ditch rights, are to be penalized by liability under the Workmen's Compensation Act, whereas others more loosely organized, but operating under similar circumstances, would be exempt? We think to do so would be extremely discriminatory and unfair. We believe the statute must be interpreted in the spirit and in accord with the intention of the legislature in its passage. Under all the facts and circumstances of this case, and confined strictly to such facts and circumstances, we conclude that claimant, at the time of his injury, was engaged in the performance of farm and ranch labor; that the award of the Commission should not have been made; and that it must be set-aside. To determine otherwise would be to resort to an unrealistic theory resulting from illogical reasoning.

 In arriving at the foregoing conclusion we are not unmindful that the workmen's compensation law is to be construed liberally and in every reasonable manner to accomplish the evident intent and purpose of the act; but in applying this rule, we must not forget that the

same legislature that passed the law granting compensation benefits, likewise passed the exemption clause which frees those who employ farm and ranch labor from the provisions of the act, unless they voluntarily elect to come under it. We must, therefore, be equally cautious to see to it that this exemption be not so restricted, limited and constricted in the interpretation of its terms and provisions as to destroy its effect. Who shall, and who shall not, come under the provisions of the compensation act, and to what extent and degree, all are questions of policy for legislative action, and it behooves the court to construe all provisions thereof in the same spirit of equality and fairness and in accordance with the intent and meaning given to the act by the legislature at the time of its passage.

The judgment of the trial court is reversed, and the cause remanded with direction to enter judgment setting aside the award of the Commission.

MR. JUSTICE ALTER and MR. JUSTICE MOORE dissent.

MR. JUSTICE HOLLAND not participating.