No. 18,098.

CARL S. SMITH *v.* INDUSTRIAL COMMISSION OF COLORADO, ET AL.
(306 P. [2d] 254)

Decided January 21, 1957.

Mr. GEORGE J. DUCKWORTH, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

CARL S. SMITH, to whom we will hereinafter refer as the employer, appeared as plaintiff in the trial court and sought without success to nullify an award of the Industrial Commission in favor of Cammeron Alley, to whom we will refer as claimant.

There is no substantial dispute as to the controlling facts, and so far as necessary they will be stated in connection with the treatment accorded the questions which we are called upon to decide. The disagreements of counsel for the parties arise with relation to the legal

conclusions to be drawn from admitted facts, which in turn involve a construction of statutes hereinafter specifically mentioned.

Questions to be Determined.

First: *At the time of the injury to claimant was Smith an employer of "farm and ranch labor" as that term is used in the Workmen's Compensation law and the provision thereof which exempts such employers from coverage by the Act?*

This question is answered in the affirmative. Only two witnesses, the claimant and the employer, testified at the hearing before the referee, whose findings were adopted by the Commission. There is no conflict between them concerning the nature of the employment of claimant and the scope of the operation conducted by the employer. The attorney general, representing the Commission and the claimant, states in his brief, "We will accept, without supplement, the statement of the case contained in the Brief of Plaintiff in Error * * *."

The claim on file with the Commission characterizes the occupation of claimant as "farm hand." He testified that his employer was engaged in the business of operating farms and marketing cattle and hogs; that claimant was engaged in feeding cattle and taking care of hogs belonging to his employer; that his duties as an employee at first were running a mower and rake, in harvesting hay crops; that the hogs came from his employer's farm in Kansas and that no hogs or cattle were fed except those belonging to his employer; that part of the feed used was grown on his employer's Colorado farm, and other parts of it were "supposed" to have come from Kansas; that the corn which was fed to the animals came in on shipments in box cars.

The employer testified that he operated a farm north of Welby, Colorado; that he planted and harvested crops; that the hay grown on the premises was fed to livestock; that he brought in hogs that were bred and raised on his Kansas farm and "finished" them for the market on his

Colorado farm; that he also raised cattle in Kansas together with crops consisting of wheat and grain sorghums and other grains which were principally used for feeding the hogs and cattle; that about fifteen to twenty per cent of the cattle which he fed in Colorado were raised on his Kansas property and the other cattle were purchased in the fall as "feeders" and fattened from his crops and the feed which was purchased to supplement his own production. He testified that claimant's duties were to assist in mowing, baling, and stacking hay; to assist in irrigation; to take care of the hogs and feed the hogs and cattle; and that he at no time fed livestock other than his own.

██ The pertinent statute, C.R.S. 1953, 81-2-6 (3), provides as follows:

"This chapter is not intended to apply to employers of * * * farm and ranch labor, * * *; provided, that any such employer may elect to accept the provisions of this chapter in the manner herein provided."

From the facts as we have stated them, it seems clear and we so hold, that claimant in this case was employed at "farm and ranch" labor within the meaning of the language above quoted, and that the employer comes within the exception excluding farm and ranch labor from the provisions of the Workmen's Compensation Law. In *Billings Ditch Company v. Industrial Commission,* 127 Colo. 69, 253 P. (2d) 1058, we said:

"Farm and ranch labor falls, of course, within the field of agriculture, which, while not a technical term, has many times been legally defined. Without undertaking to repeat these definitions at length, we state that, agriculture in general refers to any activity incident to the cultivation of land for the growing of crops, the harvesting thereof, and the care and feeding of livestock. * * * It includes tillage, seeding, husbandry, and all things incident to farming in the widest sense of that term."

The operation of the employer is well within the scope

of this rule and he is exempt from the provisions of the Workmen's Compensation law. The trial court erred in holding to the contrary.

Second: *Is there any competent evidence in the record in the instant case to support the finding of the Commission that the employer elected to accept the provisions of the Workmen's Compensation Law notwithstanding his exempt status?*

██ This question is answered in the negative. As appears from the statute quoted in our treatment of the first question, an employer of farm and ranch labor may elect to accept coverage of the Workmen's Compensation Law "in the manner herein provided." The section of the law which sets forth the method of making this election is C.R.S. 1953, 81-4-2, which in pertinent part provides:

"Election on the part of any employer to be subject to this chapter, including the employer of * * * farm and ranch laborers, * * * may be made by filing with the commission a written statement to the effect that he accepts the provisions of this chapter."

The employer in the instant case emphatically denied that he ever had filed such a statement with the commission, or authorized anyone else to file such a statement on his behalf. The claimant alleged that he was injured on January 29, 1955. The files of the commission disclosed that on April 23, 1945, a printed card, the blank portions of which had been filled in by typewriter, was received through the United States mail. This card was unsigned, and stated in substance that Carl S. Smith (the employer) "elects to accept the provisions of the Workmen's Compensation Act of Colorado * * *." The only possible explanation for the presence of this card in the commission's files was given by the employer who testified that in 1945 — ten years before the incident involved in this case and long before he owned any farm property in Colorado — he took out liability insurance to protect himself against claims which might arise

against him in connection with his Kansas operations; that he then had only one employee who at certain short periods of time worked in Colorado; that the insurance policy was not taken out with any reference to Workmen's Compensation laws of Kansas or Colorado but was written in Denver by an agent of the Travelers Insurance Company. The only evidence as to how the "election" could have reached the commission is as follows:

"A. I presume that, because having written the insurance in Colorado and having it purchased through a Colorado office, I can't imagine — I mean, I just assume that somebody on the clerical staff, as they had been trained in Colorado, or had been handling insurance in Colorado, proceeded with that step."

■ The policy issued in 1945 was cancelled in 1949 — three years before the employer began any farm or ranch operations in Colorado. Obviously this "evidence" falls far short of establishing that an election to accept the Act ever was filed or authorized by the employer. His speculation concerning the card, being based on pure conjecture, was incompetent for any purpose. The only competent evidence on the subject was given by the employer who emphatically denied that he ever elected to accept coverage under the law. The burden of proof was on claimant to establish by competent evidence that the employer himself, or some person by him duly authorized, filed, " * * * with the commission a written statement to the effect that he accepts the provisions of this chapter." No competent evidence was offered to establish this very essential fact.

In the case of *Billings Ditch Company v. Industrial Commission, supra,* the court said:

"In arriving at the foregoing conclusion [that claimant was engaged in the performance of farm and ranch labor] we are not unmindful that the workmen's compensation law is to be construed liberally and in every reasonable manner to accomplish the evident intent and

purpose of the act; but in applying this rule, we must not forget that the same legislature that passed the law granting compensation benefits, likewise passed the exemption clause which frees those who employ farm and ranch labor from the provisions of the act, unless they voluntarily elect to come under it. We must, therefore, be equally cautious to see to it that this exemption be not so restricted, limited and constricted in the interpretation of its terms and provisions as to destroy its effect. * * *"

This court also stated, in the case of *Maley et al. v. Martin et al.*, 111 Colo. 545, 144 P. (2d) 558: "We cannot extend the rule of liberal construction to a case that is removed by the statute itself."

The judgment is reversed and the cause remanded with directions to vacate the award of the commission and deny the claim.

MR. JUSTICE KNAUSS, MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.