### No. 26751

**Victor L. Jacobucci; Dorothy Jacobucci; Paul J. Jacobucci; Mary J. Jacobucci; Jean J. Jacobucci; Albert Sack; Anne Sack; Casper Sack; Katherine Sack; and Yoxall Farms, Inc., a Colorado corporation, and all other persons similarly situated v. The District Court in and for the County of Jefferson, State of Colorado, and the Honorable Roscoe Pile, one of the judges thereof; City of Thornton, Colorado, a municipal corporation of the State of Colorado, acting by and through its Utilities Board; The Farmers Reservoir and Irrigation Company, a mutual ditch company, organized pursuant to the corporation laws of the State of Colorado; City of Westminster, Colorado; the Treasurer of Jefferson County, Colorado; the Treasurer of Boulder County, Colorado; and All Unknown Persons Who Claim Any Interest in the Subject Matter of This Action**

(541 P.2d 667)

Decided September 29, 1975. Opinion modified and as modified rehearing denied November 3, 1975.

Hoffman, Goldstein, Armour & Lonnquist, Alan A. Armour, for petitioners.

Davis, Graham & Stubbs, John M. Sayre, Jon N. Halverson, Ellen Emerson Kohler, for respondents District Court and City of Thornton.

Akolt, Dick & Akolt, John P. Akolt, Robert A. Dick, John P. Akolt, III, for respondents The Farmers Reservoir and Irrigation Company.

Saunders, Snyder, Ross & Dickson, P.C., William J. Kirven, III, for City of Westminster.

Gaunt, Dirrim and Coover, Lysle R. Dirrim; Moses, Wittemyer and Harrison, P.C., Raphael J. Moses, amicus curiae, Farmers' High Line Canal and Reservoir Company and The Lower Clear Creek Ditch Company.

Preston, Altman & Parlapiano, P.C., Leo S. Altman, amicus curiae, The Bessemer Irrigating Ditch Company.

Fischer & Beatty, William H. Brown, Ward H. Fischer, amicus curiae, Consolidated Ditches Company of Water District #2 and Cache la Poudre Water Users Association.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

On November 14, 1973, the City of Thornton instituted an action in eminent domain in the Jefferson County District Court against Farmers Reservoir and Irrigation Company, the City of Westminster, a shareholder in Farmers, the Treasurer of Jefferson County, the Treasurer of Boulder County, and other unknown persons claiming any interest in the proceeding. Farmers Reservoir and Irrigation Company (Farmers) is a mutual ditch company, organized pursuant to sections 7-42-102, *et seq.*, C.R.S. 1973, as a Colorado corporation.

The petitioners here are Victor L. Jacobucci, Dorothy Jacobucci, Paul Jacobucci, Mary J. Jacobucci, Jean J. Jacobucci, Albert Sack, Anne Sack, Casper Sack, Katherine Sack, and Yoxall Farms, Inc. The petitioners, all shareholders in Farmers, filed a cross-petition, pursuant to section 38-1-109, C.R.S. 1973, in order to intervene as defendants in the condemnation proceedings. This motion was denied by the District Court on February 11, 1975, after the court concluded that the shareholders of Farmers were not indispensable parties to the proceeding. Thereafter, this court was petitioned, pursuant to its original jurisdiction under C.A.R. 21, to grant the petitioners relief. The petition requested an order permitting the shareholders to intervene and compelling their joinder as parties in the condemnation proceeding. We issued a rule to show cause why the relief requested should not be granted.

The respondents are the District Court, the Honorable Roscoe Pile, the City of Thornton, Farmers, the City of Westminster, the Treasurer of Jefferson County, the Treasurer of Boulder County, and other unknown persons claiming an interest. Only the District Court, Judge Pile, and the City of Thornton appear to contest the relief which petitioners seek. We now make our rule to show cause absolute.

■ The issue we address in this original proceeding, which renders the other issues moot, is whether the individual shareholders of a mutual ditch company are indispensable parties in an action to condemn the

shareholders' decreed water priorities. We hold that they are.

## I.

Farmers, a mutual ditch company, administers an extensive water distribution system divided into four divisions. The Standley Lake Division includes a storage reservoir known as Standley Lake located in Jefferson County. The decreed water rights of this reservoir are used to irrigate approximately 15,000 acres of land situated in Jefferson, Adams, and Weld Counties. Property rights administered by the Standley Lake Division are the subject of the condemnation action which created the issues in this proceeding.

At the time of the institution of the condemnation proceeding, Farmers represented a total of 1,105 shareholders, 271 of whom owned shares allocated to the Standley Lake Division of Farmers. The 271 shareholders in the Standley Lake Division of Farmers were the only shareholders affected by the condemnation action. The petitioners are aggrieved shareholders. The properties sought to be condemned by Thornton may be categorized as follows:

(a) Decreed ditch priorities;

(b) Decreed storage priorities;

(c) Ditches and ditch rights;

(d) An interest in the Golden-Ralston Creek and Church Ditch Company and in the Church Ditch, including all stock in the Golden-Ralston Creek and Church Ditch Company, a carrier corporation owned by Farmers;

(e) The Standley Lake Dam and Reservoir;

(f) Certain contracts between Farmers and the Farmers High Line Canal and Reservoir Company;

(g) All records of Farmers relating to the other listed properties sought to be condemned.

Included in the decreed water priorities sought to be condemned is a 1936 decree for storage in Standley Lake of 32,361 acre feet of water and a conditional decree for an additional 16,699 acre feet, representing a total of 49,487 acre feet of storage, with a diversion through the Croke Canal at a rate of 944 cubic feet per second. The record title to the physical properties of the ditches, reservoir, lands, and rights-of-way stands in the name of Farmers.

## II.

In order to determine whether the shareholders of Farmers are indispensable parties to the condemnation proceedings, we must define the nature of their relationship to the mutual ditch company and to the rights and properties administered by the corporation. The history behind the growth and purposes of mutual ditch companies is necessary to an analysis of the issue which is before us.

The rapid development and expansion of agriculture in the arid regions of the west led to the increased importance of irrigation. Irrigation itself, however, proved to be a great obstacle to farmers in need of irriga-

tion water. The construction and maintenance of canals and ditches required the outlay of large sums of money. The average farmer did not have sufficient means to construct, own, or operate an irrigation ditch to convey water to his land. The most economical solution was to convey the water over a great distance through a single large main and laterals and then distribute it to consumers by means of smaller laterals. *Golden Canal Co. v. Bright*, 8 Colo. 144, 6 P. 142 (1884).

In response to the enormous task of supplying water to the parched farmlands, farmers banded together and formed mutual ditch companies for the express purpose of storing and conducting water for irrigation purposes. Farmers who may have previously owned ditches as tenants-in-common would transfer their ownership rights to mutual ditch companies and in return receive stock representing their water rights. This made possible the distribution of water over large areas of land, often remote from the source of supply, and increased the availability of irrigated farmland at reasonable costs. Not only was the management of the ditches and reservoirs made more efficient, but capital was made more available through the operation of these companies. *See J. Long, Law of Irrigation* (1st ed. 1901).

■ Mutual ditch companies in Colorado have been recognized as quasi-public carriers. *Farmers Independent Ditch Co. v. Agricultural Ditch Co*, 22 Colo. 513, 45 P. 444 (1896). Farmers is not organized for profit or hire and exists primarily for the benefit of its shareholders. Farmers is engaged in the business of storing and transporting water to shareholders who own the right to use the water. *Farmers Independent Ditch Co. v. Agricultural Ditch Co., supra*; *cf. White v. Farmers' Highline Canal and Reservoir Co.*, 22 Colo. 191, 43 P. 1028 (1896); *Wyatt v. Larimer and Weld Irrigation Co.*, 18 Colo. 298, 33 P. 144 (1893); *Wheeler v. Northern Colorado Irrigation Co.*, 10 Colo. 582, 17 P. 487 (1887).

■ Mutual ditch companies like Farmers were formed expressly for the purpose of furnishing water to shareholders, not for profit or hire. *See Combs v. Agricultural Ditch Co.*, 17 Colo. 146, 28 P. 966 (1892); *C. Kinney, Irrigation & Water Rights* § 1482 (2d ed. 1912). Delivery of water to the consumers is conditioned upon the payment of an annual assessment levied by the company to meet operating expenses and, if they exist, debt installments. Section 7-42-104, C.R.S. 1973. These companies are not organized under the general Colorado corporation statutes, but under special legislation for ditch and reservoir companies. Sections 7-42-101, *et seq.*, C.R.S. 1973. According to *Colo. Const.* Art. X, Sec. 3, "[d]itches, canals and flumes owned by individuals or corporations for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes." "Ditches, canals and flumes" have been defined so as to include headgates, dams, reservoirs, reservoir beds, the earth upon which the dam stands, and the lands sur-

rounding the reservoirs with the improvements thereon that are an integral part of the irrigation system as a whole and necessary for its proper maintenance and operation. *Cf. Logan Irrigation District v. Holt*, 110 Colo. 253, 133 P.2d 530 (1943); *see Shaw v. Bond*, 64 Colo. 366, 171 P. 1142 (1918).

## III.

■ The relationship between the mutual ditch corporation and its shareholders arises out of contract, implied in a subscription for stock and construed by the provisions of a charter or articles of incorporation. *Supply Ditch Co. v. Elliot*, 10 Colo. 327, 15 P. 691 (1887); *C. Kinney, Irrigation & Water Rights* § 1482 (2d ed. 1912).

■ The articles of incorporation or charter of a mutual ditch company sets forth the express purposes which the corporation undertakes to carry out. The corporation is not only obligated to furnish a proper proportion of water to each of its shareholders, but it is liable in damages for the failure to do so. *Rocky Ford Canal Co. v. Simpson*, 5 Colo. App. 30, 36 P. 638 (1894). The corporation must protect and preserve the interests of the shareholders by keeping the ditches, canals, reservoir, and other works in good repair (*Supply Ditch Co. v. Elliot, supra*), the expense of which is paid from the special assessment. Sections 7-42-104, 7-42-107, 7-42-108, C.R.S. 1973.

■ The shares of stock in a mutual ditch corporation represent the "consumer's interest in the reservoir, canal, and water rights." *Beaty v. Board of County Comm'rs. of Otero County*, 101 Colo. 346, 73 P.2d 982 (1937); *Comstock v. Olney Springs Drainage District*, 97 Colo. 416, 50 P.2d 531 (1935); *Kendrick v. Twin Lakes Reservoir Co.*, 58 Colo. 281, 144 P. 884 (1914). The benefit derived from the ownership of such stock is the right to the exclusive use of the water it represents, the water being divided pro-rata according to the number of shares of stock held by each shareholder. *Kendrick v. Twin Lakes Reservoir Co., supra; Billings Ditch Co. v. Industrial Comm'n.*, 127 Colo. 69, 253 P.2d 1058 (1953). The shareholders have the right to change the place of the use of the water if other users are not injured thereby. *See Wadsworth Ditch Co. v. Brown*, 39 Colo. 57, 88 P. 1060 (1907); *Cache La Poudre Irr. Co. v. Larimer and Weld Reservoir Co.*, 25 Colo. 144, 53 P. 318 (1898).

■ As a mutual ditch company, Farmers is "merely the vehicle by which its owners operate and manage its affairs." *Billings Ditch Co. v. Industrial Comm'n., supra.* The corporation, like other mutual ditch companies, was organized solely for the convenience of its members in the management of the irrigation and reservoir systems. *Billings Ditch Co. v. Industrial Comm'n., supra.* The ownership of the shares of stock is merely incidental to the ownership of the water rights by the shareholders. *Comstock v. Olney Springs Drainage District, supra; Billings Ditch Co. v. Industrial Comm'n., supra.* We wish to emphasize that the shares of stock owned by Farmers' shareholders represent a definite and specific

water right, as well as a corresponding interest in the ditch, canal, reservoir, and other works by which the water right is utilized.

### IV.

The City of Thornton seeks to analogize the position of the shareholders in Farmers to that of the shareholders in any other corporation. On this basis, they argue that the shareholders in Farmers are not necessary parties to this litigation, because the corporation, under principles of corporation law, is bound to protect their interests. We have held that a mutual ditch corporation is responsible for maintaining actions in the corporate name to secure or protect the consumers' water rights or other property and to represent the shareholders in civil actions. *Montrose Canal Co. v. Loutsenhizer Ditch Co.*, 23 Colo. 233, 48 P. 532 (1896); *see also Farmers' Independent Ditch Co. v. Agricultural Ditch Co.*, 22 Colo. 513, 45 P. 444 (1896); *Supply Ditch Co. v. Elliot, supra.* Inasmuch as Farmers holds legal title to the physical properties sought to be condemned, Thornton argues that Farmers is the real party in interest, not the shareholders. *See In re Babcock*, 26 F.2d 153 (7th Cir. 1928).

In the first place, as petitioners rightly point out, a mutual ditch corporation is not organized under the general corporation laws, but under a separate and independent statutory provision. Sections 7-42-101, *et seq.*, C.R.S. 1973. We find that the unique character of these corporations mandates different treatment which is not fully in accord with the principles applicable to corporations in general. As noted above, the shares of stock held by the consumers in a mutual ditch corporation represent a specific property interest in a water right. The interest of these shareholders cannot be "defeated or altered by any action of the ditch company or its other shareholders." *United States v. 508.88 Acres of Land*, U.S. District Ct. (D. Colo. May 8, 1973, Unpublished); *Bent v. Second Extension Water Co.*, 51 Cal. App. 648, 197 P. 657 (1921). While the "naked title" may stand in the name of Farmers, the ditch, reservoir, and water rights are actually owned by the farmers who are served thereby. *Billings Ditch Co. v. Industrial Comm'n., supra; accord Beaty v. Board of County Comm'rs. of Otero County, supra; Comstock v. Olney Springs Drainage District, supra.* The shareholders are the real parties in interest in the condemnation action, not the corporation. *See Stuart v. Jefferson County*, 25 Colo. App. 568, 139 P. 577 (1914).

### V.

Alternatively, Thornton seeks to characterize the relationship between Farmers and the shareholders as a trust relationship, the corporation acting as trustee for the benefit of the shareholders. This contention is not without some support. Kinney described the relationship thus:

"The relations between private incorporated water companies . . . organized as mutual corporations . . . is that of contract. . . .

. . . .

"From this contract springs a trust relation between the company and its stockholders or shareholders, with which the corporation is charged to

conduct the common business in the interest of the stockholders (ftnt. omitted), and furthermore, the corporation being a trustee for its stockholders, it is bound to protect their interests (ftnt. omitted)." *C. Kinney, Irrigation & Water Rights* § 1482 (2d ed. 1912).

The trust analogy has been utilized in Colorado case law as well. *United States v. 508.88 Acres of land, supra; Monte Vista Canal Co. v. Centennial Irrigating Co.*, 24 Colo. App. 496, 135 P. 981 (1913).

We wish, however, to warn against the use of simplistic, categorical definitions. Deductions made from the application of general legal concepts may be dangerously inappropriate as applied to specific contexts. Mr. Justice Holmes expressed a similar caveat with regard to the use of the term "partnership," in *Guy v. Donald*, 203 U.S. 399, 27 S.Ct. 63, 51 L.Ed. 245 (1906):

"As long as the matter to be considered is debated in artificial terms there is a danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied."

Application of the term "trust" to the relationships in the instant case with respect to the particular issue at hand is inappropriate. The City of Thornton seeks to condemn the water rights of the shareholders. We have not found a case in Colorado which has held that a mutual ditch corporation holds the actual "water rights" in trust. On the contrary, the law uniformly holds that the actual ownership of the water rights is in the shareholder. *Billings Ditch Co. v. Industrial Comm'n., supra; Comstock v. Olney Springs Drainage District, supra; Board of Comm'rs. of Montezuma County v. Cortez Land & Securities Co.*, 81 Colo. 269, 254 P. 996 (1927).

Furthermore, the interests of the shareholders, insofar as the actual appropriation of the water is concerned, are not identical to the corporation. As stated in *San Bernadino Valley Municipal Water District v. Meeks and Daley Water Co.*, 226 Cal. App. 2d 216, 38 Cal. Rptr. 51 (1964):

"The water company has an obligation to deliver water, while the shareholder has a right to receive water. The company has no interest in the affected lands of the shareholders; it cannot claim compensation because orchards may dry up and die or because a householder is deprived of water."

Farmers is obligated to store and transport the water, while the shareholders in the instant case are not only entitled to receive water, but are the actual owners of the water right itself.

Unlike a trust, a duality of effort exists in the present case between the corporation and its shareholders. Unless the corporation diverts the water, the shareholders cannot effectively use it. On the other hand, unless the shareholders make beneficial application of the water to their land, the company cannot divert the water. Appropriation of water to an actual beneficial use, and not mere ownership of stock, entitles a share-

holder to his water rights. Mere diversion of the water does not constitute appropriation of water so as to satisfy Colorado constitutional requirements. *Combs v. Agricultural Ditch Co.*, 17 Colo. 146, 28 P. 966 (1892), held:

"The ownership of the stock like the title to other property may be acquired by descent or purchase; the ownership of the [water right] can be acquired originally only by the actual beneficial use of the water. The very birth and life of a prior right to the use of water is actual use. A stockholder in an irrigating company who makes an actual application of water from the company's ditch to beneficial use may, by means of such use, acquire a prior right thereto; but his title to the stock without such use gives him no title to the priority. He may transfer his stock to whom he will; but he can only transfer his priority to some one who will continue to use the water."

In effect, what Thornton seeks to condemn is the right to make beneficial application of the water. This right does not belong to the corporation, but to the shareholders. The right of the corporation to hold title to the water rights and other property, and to manage the affairs of the corporation, should be distinguished from the right of the shareholders to use the water on their lands. Were this right to be construed as a trust res, the beneficiaries, not the trustees, would be the ones who beneficially administer the trust res. That this analogy must fail is obvious. The water rights owned by the shareholders of Farmers constitute the right to use the water, not the legal title to the water. *Handy Ditch Co. v. Greeley and Loveland Irrigating Co.*, 86 Colo. 197, 280 P. 481 (1929); *Pulaski Irrigating Ditch Co. v. City of Trinidad*, 70 Colo. 565, 203 P. 681 (1922). Inasmuch as the right to "use water" vests solely in the shareholders, and the corporation neither administers nor participates in this actual use, the corporation cannot be deemed the trustee and only proper representative of the shareholders' interests in this matter.

## VI.

In our view, shareholders are indispensable parties. C.R.C.P. 19. Proceedings under the Colorado Eminent Domain Statutes (Sections 38-1-101, *et seq.*, C.R.S. 1973), are subject to the Rules of Civil Procedure. *Stalford, et al. v. Board of County Comm' rs. of Prowers County*, 128 Colo. 441, 263 P.2d 436 (1953); *Boxberger v. State Highway Comm' n.*, 126 Colo. 526, 251 P.2d 920 (1952). Hence, whether the shareholders of Farmers are to be deemed indispensable parties to the condemnation action is controlled by C.R.C.P. 19.

Whether a party is "indispensable" within the meaning of Rule 19 can "only be determined in the context of particular litigation." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed. 2d 936 (1968). The first determination to be made is whether the District Court in the present case can proceed in the absence of the shareholders as parties. *Provident Tradesmens Bank & Trust Co. v. Patterson, supra.* The mere fact that a party may be found

to be indispensable does not necessarily deprive the court of jurisdiction in the case. *Centennial Casualty Co. v. Lacey*, 133 Colo. 357, 295 P.2d 690 (1956). C.R.C.P. 19 provides, in pertinent part:

"A person who is properly subject to service of process in the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (a) As a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."

The shareholders of Farmers are so situated that their ability to protect their interest in the beneficial application of the water to their land is, as a practical matter, impaired.

"[T]he prejudicial effect of nonjoinder referred to in Rule 19(a) (2) may be practical rather than legal in character. . . . [J]oinder will be insisted upon if the action detrimentally affects . . . the absentee's ability to *protect his property* or to prosecute or defend any subsequent litigation in which he might become involved." (Emphasis supplied.) *C. Wright & A. Miller, Federal Practice and Procedure* § 1604.

The condemnation action here in issue has the potential of seriously disrupting the shareholders' property interests. *See Potts v. Gordon*, 34 Colo. App. 128, 525 P.2d 500 (1974). That the water rights owned by Farmers' shareholders are property rights is well established by Colorado law. *Billings Ditch Co. v. Industrial Comm'n., supra; Brighton Co. v. Englewood*, 124 Colo. 366, 237 P.2d 116 (1951); *Beaty v. Board of County Comm'rs. of Otero County, supra; Comstock v. Olney Springs Drainage District, supra; Kendrick v. Twin Lakes Reservoir Co., supra*.

At least 271 shareholders, as of the date of the petition in condemnation, are faced with the prospect of having their farmlands denied a substantial source of water. The productivity and value of their lands, as well as the assurance of their livelihoods, is in many cases entirely dependent upon the continuing flow of water from Standley Reservoir. No court can ignore the magnitude of disruption which would result in a successful condemnation action by the City of Thornton. Moreover, each shareholder stands in a different position from the others and is likely to be affected differently by the condemnation action. Their ability to protect those individualized interests would surely be impaired if this action were allowed to proceed in their absence.

C.R.C.P. 19(a) mandates that those persons falling within its provisions should be joined if feasible. *See also Potts v. Gordon, supra; Bradley v. School Board*, 51 F.R.D. 139 (E.D. Va. 1970); *C. Wright & A. Miller, Federal Practice and Procedure* § 1604. Joinder is feasible, provided that (1) the absentee is subject to service of process, (2) his joinder will not deprive the court of jurisdiction, and (3) he has no

valid objection to venue of the court. *Potts v. Gordon, supra.*

The evidence in the present case does not suggest that joinder would be infeasible. All shareholders of Farmers similarly situated to the petitioners herein are subject to service of process. Provided the City of Thornton establishes by competent evidence a failure to agree upon the compensation to be paid for the rights sought to be taken, the joinder of these shareholders will not deprive the District Court of jurisdiction. *See* section 38-1-102, C.R.S. 1973; *Stalford, et al. v. Board of County Comm'rs.*, 128 Colo. 441, 263 P.2d 436 (1953); *Old Timers Baseball Ass'n. v. Housing Auth.*, 122 Colo. 597, 224 P.2d 219 (1950). Therefore, pursuant to C.R.C.P. 19, and this court's power under C.A.R. 21, the District Court should join as parties to the condemnation action those shareholders in the Standley Lake Division of Farmers whose water rights would be affected by the condemnation action of Thornton as of the date of the initiation of the condemnation action and all parties in interest.

Accordingly, the rule to show cause is made absolute, and we remand to the District court for further proceedings consonant with the views expressed in this opinion.