**LEFT HAND DITCH COMPANY,**
a Colorado corporation,
Petitioner,

v.

**David G. HILL and Joan
S. Hill, Respondents.**

No. 95SC662.

Supreme Court of Colorado,
En Banc.

Feb. 18, 1997.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Lirtzman & Nehls, P.C., Richard C. Nehls, Boulder, for Petitioner.

David G. Hill, Boulder, for Respondents.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Hill v. Behrmann*, 911 P.2d 679 (Colo.App.1995), to determine whether shareholders in a mutual ditch company have either a statutory or common law right to inspect the ditch company's shareholder list.[1] The trial court held that the shareholders were not entitled to inspect the ditch company's shareholder list and granted the ditch company's C.R.C.P. 12(b)(5) motion

---

1. We granted certiorari to consider the following issue:
    Did the court of appeals err when it applied § 7–5–117, 3A C.R.S. (1986), of the Colorado Corporation Code to a nonprofit mutual ditch company?

to dismiss. The court of appeals held that the shareholders could inspect the ditch company's shareholder list pursuant to the Colorado Corporation Code, §§ 7–1–101 to 7–10–113, 3A C.R.S. (1986) (the Colorado Corporation Code). Although we affirm the court of appeals, we do so on the grounds that the shareholders have a common law right to inspect the ditch company's shareholder list.

### I.

Left Hand Ditch Company (Left Hand) was organized, as a nonprofit corporation, to provide water to shareholders in the Niwot region of Boulder County. Left Hand is comprised of 16,800 shares of capital stock and allocates water on a pro-rata basis depending upon the number of shares owned by each shareholder. The shareholders then use the water for irrigation, domestic, industrial, and commercial purposes. Left Hand requires that its shareholders pay yearly assessments to: (1) fund the operations of the corporation; (2) keep ditches, reservoirs, and other company property in good repair; and (3) pay claims against the corporation. Richard Behrmann (Behrmann) was president of Left Hand in 1993, when the facts of this dispute arose.

David G. Hill and Joan S. Hill (the Hills) own thirty-three shares of Left Hand stock. On May 21, 1993, the Hills sent a letter to Left Hand's secretary requesting permission to examine and copy Left Hand's shareholder list. On June 24, 1993, the Hills sent a second letter to Behrmann making a similar request. In the letters, the Hills explained that they sought to inspect Left Hand's shareholder list: (1) to sell or rent their shares; (2) to better understand what may happen to Left Hand in the future; and (3) to better communicate with other shareholders.

On July 21, 1993, Left Hand's Board of Directors (the Board) denied the Hills' requests to inspect Left Hand's shareholder list. The Board explained that information concerning the personal stock holdings of shareholders should be kept confidential and that Left Hand had existing mechanisms designed to assist shareholders who wished to rent their shares. The Board also offered to relay the Hills' interest in selling their shares to prospective purchasers that contacted Left Hand.

On January 25, 1994, the Hills filed suit in Boulder County District Court seeking an order to compel the release of Left Hand's shareholder list.[2] Left Hand filed a C.R.C.P. 12(b)(5) motion to dismiss, claiming that the Colorado Corporation Code did not apply to mutual ditch companies.

The trial court granted Left Hand's motion to dismiss. Relying upon section 7–1–102(5), 3A C.R.S. (1986), of the Colorado Corporation Code, which limits the definition of "corporation" to "for profit" enterprises, the trial court found that the statutory right of inspection contained in section 7–5–117, 3A C.R.S. (1986), of the Colorado Corporation Code did not apply to mutual ditch companies such as Left Hand. The trial court additionally determined that any common law right of inspection was superseded by the enactment of section 7–5–117.

The court of appeals reversed. The court of appeals held that the Colorado Corporation Code applied to mutual ditch companies because the broad, inclusive nature of section 7–1–103(4), 3A C.R.S. (1986), and the Colorado Corporation Code's overall statutory scheme overrode the narrow definition of "corporation" contained in section 7–1–102(5). Because the court of appeals held that the Hills had a statutory right to inspect Left Hand's shareholder list, the court of appeals did not address whether the Hills had a common law right of inspection.

### II.

A long line of Colorado cases has analyzed the function mutual ditch companies play in our system of water rights. In these decisions, we have recognized that mutual ditch companies possess special characteristics that warrant different treatment from that given ordinary corporations.

---

**2.** The Hills' complaint also requested penalties against Behrmann in his individual capacity pursuant to·§ 7–5–117(3), 3A C.R.S. (1986), attorney fees, and any other relief that the court deemed proper.

A mutual ditch company is organized, as a nonprofit organization, solely for the convenience of its members in managing a joint water distribution system. *See Jacobucci v. District Court*, 189 Colo. 380, 387, 541 P.2d 667, 672 (1975); *Billings Ditch Co. v. Industrial Comm'n*, 127 Colo. 69, 74, 253 P.2d 1058, 1060 (1953). The management function of a mutual ditch company may address matters concerning the channels, ditches, laterals, reservoirs, dams, headgates, flumes, weirs, water rights and decrees, and other property contained in the water distribution system. *See Southeastern Colo. Water Conservancy Dist. v. Fort Lyon Canal Co.*, 720 P.2d 133, 141 (Colo.1986).

■ The benefit conferred upon a shareholder owning ditch company stock is the exclusive right to use the corporation's water on a pro-rata basis according to the number of shares owned. *See Jacobucci*, 189 Colo. at 387, 541 P.2d at 672. On prior occasions, we have explained that owning shares of stock in a mutual ditch company is "incidental to the ownership of the water rights." *Id.; Billings*, 127 Colo. at 74, 253 P.2d 1058 at 1060; *Beaty v. Board of County Comm'rs*, 101 Colo. 346, 351-52, 73 P.2d 982, 985 (1937). Because shareholders in a mutual ditch company own a right to apply water to a beneficial use instead of merely owning shares of corporate stock, ditch company shares are considered real property rather than personal property. *See Fort Lyon*, 720 P.2d at 141. For this reason, "mutual ditch companies are not 'true' corporations in a legal sense but merely vehicles for individual ownership of water rights." *Id.* Therefore, "the unique character of these corporations mandates different treatment which is not fully in accord with the principles applicable to corporations in general." *Jacobucci*, 189 Colo. at 388, 541 P.2d at 672. With this framework in place, we may now examine the relevant statutes.

## III.

Colorado corporations fall into one of three distinct statutory classifications: (1) corpora-tions governed by the Colorado Corporation Code, §§ 7-1-101 to 7-10-113, 3A C.R.S. (1986);[3] (2) nonprofit corporations governed by the Colorado Nonprofit Corporation Act, §§ 7-20-101 to 7-29-108, 3A C.R.S. (1986 & 1996 Supp.) (the Nonprofit Code); and (3) special purpose corporations governed by sections 7-40-101 to 7-52-106, 3A C.R.S. (1986 & 1996 Supp.). In order to address whether the Hills possess a statutory right to inspect Left Hand's shareholder list, we must first determine which of these statutory schemes applies to mutual ditch companies.

Our primary task in construing statutes that are part of an overall statutory scheme is to give effect to the intent of the General Assembly. *See Yuma County Bd. of Equalization v. Cabot Petroleum Corp.*, 856 P.2d 844, 849 (Colo.1993). When the General Assembly adopts a comprehensive regulatory program, the legislation should be construed as a whole, giving effect to all of its parts in the context of the entire scheme. *See PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995). Statutes related to the same subject matter are construed *in pari materia*, in order to give consistent, harmonious, and sensible effect to all of their parts. *See Yuma County*, 856 P.2d at 849.

■ We hold that mutual ditch companies exist as special purpose corporations falling outside the reach of the Colorado Corporation Code. This holding is based on our reading of the overall statutory scheme that governs business corporations as well as the line of Colorado cases recognizing that mutual ditch companies deserve special treatment in situations where their corporate character is at issue.

### A.

Section 7-1-102(5), 3A C.R.S. (1993 Supp.),[4] of the Colorado Corporation Code defines "corporation" as "a corporation for

---

3. The Colorado Corporation Code was repealed and reenacted effective July 1, 1994, and is now known as the "Colorado Business Corporation Act." *See* §§ 7-101-101 to 7-117-105, 3A C.R.S. (1996 Supp.). The facts of this case arose before this statutory change went into effect and are not affected by the Colorado Business Corporation Act.

4. This section was amended in 1990 before being repealed and reenacted in 1994.

profit subject to the provisions of this code." Section 7–1–103(4) provides in relevant part:

> This Code shall apply to corporations of every class, including classes organized under and governed by other statutes of Colorado, to the extent that it is not inconsistent with the other statutes.

§ 7–1–103(4), 3A C.R.S. (1986). Corporations that fall within the reach of the Colorado Corporation Code must keep shareholder lists and make them available to shareholders pursuant to section 7–5–117, 3A C.R.S. (1986). Section 7–1–102, 3A C.R.S. (1986), qualifies the definition of "corporation" by providing that the definition applies "unless the context otherwise requires." Seizing upon this language and the broad, "corporations of every class" language of section 7–1–103(4), the court of appeals held that Left Hand was subject to the Colorado Corporation Code and section 7–5–117. *Hill,* 911 P.2d at 682.

Contrary to the court of appeals, we believe that the Colorado Corporation Code and section 7–5–117 do not apply to nonprofit mutual ditch companies such as Left Hand. First, a literal reading of section 7–1–102(5) clearly limits the definition of "corporation" to "for profit" corporations. Mutual ditch companies are governed by a separate and independent statutory scheme designed to accommodate special purpose corporations. *See Public Serv. Co. v. Blue River Irrigation Co.,* 753 P.2d 737, 741 (Colo.1988); *Fort Lyon,* 720 P.2d at 141; *Jacobucci,* 189 Colo. at 388, 541 P.2d at 672. It is therefore unnecessary to strain the definition of "corporation" contained in section 7–1–102(5) and subject mutual ditch companies to the additional requirements of the Colorado Corporation Code. *See Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 246 (Colo. 1992) (explaining that "[s]trained or forced constructions of statutes are disfavored").[5]

Second, we have held in prior decisions that the unique character of mutual ditch companies may warrant departure from traditional corporate principles embodied in our Constitution and statutes. *See Fort Lyon,* 720 P.2d at 141–42 (holding that the state may own shares of mutual ditch company stock despite the prohibition on state ownership of stock contained in Article XI, section 2, of the Colorado Constitution); *Beaty,* 101 Colo. at 353, 73 P.2d at 985–86 (holding that a statute exempting corporate stock from taxation is not applicable to mutual ditch company stock). These decisions make clear that wholesale application of the Colorado Corporation Code to mutual ditch companies is not appropriate because these entities are not "true" corporations for which the Colorado Corporation Code was drafted. *Fort Lyon,* 720 P.2d at 141.

### B.

Mutual ditch companies may be organized as special purpose corporations pursuant to the Ditch and Reservoir Act, §§ 7–42–101 to –118, 3A C.R.S. (1986 & 1996 Supp.) (the Ditch Act). The Ditch Act provides the specific requirements applicable to ditch or reservoir companies such as: rights-of-way, § 7–42–103, 3A C.R.S. (1986); assessments on stock for repair and upkeep, § 7–42–104, 3A C.R.S. (1986); distribution of water, § 7–42–107, 3A C.R.S. (1986); consolidation, § 7–42–110, 3A C.R.S. (1986); and liability of shareholders, directors, and officers, § 7–42–118, 3A C.R.S. (1986 & 1996 Supp.).

The Ditch Act does not contain general requirements for corporate formation or structure. Section 7–42–101(1), 3A C.R.S. (1986), provides:

> When three or more persons associate under the provisions of law to form a corporation for the purpose of constructing a ditch, reservoir, pipeline, or any part thereof to convey water from any natural or artificial stream, channel, or source whatever to any mines, mills, or lands or

---

**5.** Additionally, § 7–42–118, 3A C.R.S. (1986), of the Ditch Act provides:

> Stockholders, directors, and officers of corporations formed under the provisions of this article shall enjoy the same measure of immunity from liability for corporate acts or omissions as stockholders, directors, and officers of

> corporations formed under the "Colorado Corporation Code", articles 1 to 10 of this title, or the "Colorado Nonprofit Corporation Act", articles 20 to 29 of this title.

If, as the Hills suggest, the Colorado Corporation Code applies to mutual ditch companies, this section has no practical effect.

for storing the same, they shall in their articles of incorporation, *in addition to the matters otherwise required,* specify: The stream, channel, or source from which the water is to be taken; the point or place at or near which the water is to be taken; the location, as near as may be, of any reservoir intended to be constructed; the line, as near as may be, of any ditch or pipeline intended to be constructed; and the use to which the water is intended to be applied.

(Emphasis added.) The "matters otherwise required" language in section 7–42–101(1) refers to sections 7–40–101 to –113, 3A C.R.S. (1986 & 1996 Supp.), which provide the general corporate requirements for special purpose corporations. *See* § 7–40–101, 3A C.R.S. (1986) (persons entitled to organize); § 7–40–102, 3A C.R.S. (1986) (general powers); § 7–40–103, 3A C.R.S. (1986) (contents of certificate or bylaws); § 7–40–106, 3A C.R.S. (1986) (permitted associations); § 7–40–107 (prohibition against dividends); §§ 7–40–108 to –113, 3A C.R.S. (1986) (procedures for merger and consolidation). It is these statutory provisions that provide the corporate formality requirements for special purpose corporations, such as Left Hand, that are neither for profit nor organized under the Nonprofit Code.[6]

## IV.

The Ditch Act and sections 7–40–101 to –113 do not address whether mutual ditch company shareholders have a right to inspect the corporation's shareholder list. Because there is no statutory right of inspection applicable, it is necessary to resort to common law principles in resolving this issue. *See Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo.1994) (explaining in the context of a federal statute that "courts are to fill the statutory gaps by referring to principles of common law").

■ Shareholders have a common law right to inspect the books and records of the corporation. *See Dines v. Harris,* 88 Colo. 22, 31–32, 291 P. 1024, 1027–28 (1930). This

right of inspection is available to the shareholders of a nonprofit corporation. *See Bill Reno, Inc. v. Rocky Mountain Ford Dealers' Adver. Ass'n,* 151 Colo. 406, 408, 378 P.2d 206, 207 (1963). Similarly, we have explained that shareholders in a nonprofit water corporation have a "fundamental right" to inspect the corporation's shareholder list. *Bell v. Arnold,* 175 Colo. 277, 285, 487 P.2d 545, 549 (1971); *see also Blue River Irrigation,* 753 P.2d at 741–42 (holding that the identity of shareholders in a mutual ditch company is not privileged and is discoverable and admissible in a diligence proceeding before a water court).

The rationale for this rule derives from the notion that "the books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders." *Dines,* 88 Colo. at 34, 291 P. at 1028. Viewing shareholder lists and other records of the corporation as the property of the shareholders is especially compelling in the context of mutual ditch companies, where the shareholders own an interest in real property. *See Fort Lyon,* 720 P.2d at 141. For this reason, a shareholder's right to inspect a mutual ditch company's shareholder list should be "zealously guarded." *Dines,* 88 Colo. at 34, 291 P. at 1028.

■ In this case, the Hills seek access to Left Hand's shareholder list for the primary purpose of locating parties interested in buying or renting the Hills' shares. While section 7–5–117(2), 3A C.R.S. (1986), of the Colorado Corporation Code expressly requires that shareholders have a "proper purpose" in seeking access to a corporation's shareholder list, it is unclear to what extent such a limitation was delineated in our common law. *See Bell,* 175 Colo. at 285, 487 P.2d at 549 (finding that shareholders have a fundamental right to inspect the corporation's shareholder list for "any lawful purpose"); *Dines,* 88 Colo. at 36–37, 291 P. at 1029 (holding that a shareholder's motive and good faith are material when the shareholder asks for permission to inspect the corporate books).

---

**6.** Left Hand did not elect to accept the statutory requirements of the Nonprofit Code. *See* § 7–20–103(1)(c), 3A C.R.S. (1986). Therefore, § 7–24–109, 3A C.R.S. (1986), which requires nonprofit

corporations organized under the Nonprofit Code to keep shareholder lists and make them available to shareholders, is inapplicable.

**6**

We need not determine the level of propriety necessary to evaluate the Hills' purpose in seeking access to Left Hand's shareholder list because the Hills' purposes are both lawful and proper. Selling or renting one's shares in a mutual ditch company is a fundamental component of the shareholder's real property interest. *See Fort Lyon*, 720 P.2d at 141. Seeking the shareholder list to locate interested buyers or renters is directly related to that interest. Furthermore, there is no evidence that the Hills seek the shareholder list in bad faith or to pursue an improper motive. *See Dines*, 88 Colo. at 36–37, 291 P. at 1029.[7] Therefore, the Hills' primary purpose satisfies either a "lawful" or "proper" purpose standard and must be accommodated.[8]

### V.

We hold that the shareholders of a mutual ditch company have a common law right to inspect the ditch company's shareholder list. The judgment of the court of appeals is therefore affirmed on different grounds.

---

**7.** Left Hand cites *Shabshelowitz v. Fall River Gas Co.*, 412 Mass. 259, 588 N.E.2d 630 (1992), as support for its argument that seeking the shareholder list to sell one's shares in the corporation is not a proper purpose. *Shabshelowitz*, however, is not on point because there, the shareholder sought the shareholder list to buy additional shares of the corporation's stock. *Shabshelowitz*, 588 N.E.2d at 631. Furthermore, the *Shabshelowitz* court explained that Massachusetts com-

mon law imposed stricter requirements on a shareholder than merely showing a "proper purpose." *Id.* at 633.

**8.** Although Left Hand claims that it has created other mechanisms through which shareholders may rent or sell their shares, such procedures do not negate the Hills' common law right to inspect the shareholder list.